UNITED STATES of America,
Plaintiff-Appellee,

v.

COLUMBIA BROADCASTING SYSTEM,
INC., Defendant-Appellant.

No. 73-2602.

United States Court of Appeals,
Fifth Circuit.

July 11, 1974.

Talbot D'Alemberte, Miami, Fla., Morton Stavis, Doris Peterson, Nancy Stearns, Center for Constitutional Rights, New York City, Larry G. Turner, Gainesville, Fla., Cameron Cunning-

ham, Brady Coleman, Austin, Tex., for Briggs.

Jack S. Graff, Pensacola, Fla., for defendant-appellant.

William H. Stafford, Jr., U. S. Atty., Pensacola, Fla., Elliot Richardson, Atty. Gen., Erwin N. Griswold, Sol. Gen., of the U. S., Guy Goodwin, Robert A. Dierker, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before DYER, MORGAN and RONEY, Circuit Judges.

DYER, Circuit Judge:

The inherent tension between two fundamental constitutional guarantees—the freedom of the press and the right to a fair trial—is manifest in this appeal by the Columbia Broadcasting System from a series of district court orders which restricted the making and publishing of sketches. The lower court forbade not only in-court sketching, but also proscribed the publication of sketches of courtroom scenes, regardless of where the sketches were made. Because the orders are unconstitutionally overbroad, they must be vacated.

This controversy began during the pre-trial stage of the criminal prosecution of individuals, popularly known as the "Gainesville Eight," who were accused of conspiring to disrupt the Republican National Convention in 1972. CBS News sent correspondent Jed Duvall and artist Aggie Whelan to cover the trial, which was scheduled to begin on July 31, 1973. A pre-trial hearing was held on June 20, 1973, and on that date the trial judge announced orally that "no sketches in the courtroom would be permitted to be made for publication." Pursuant to these instruc-

tions, Whelan took no sketch materials into the courtroom, but did enter to observe the proceedings. After two hours she left and began sketching outside in the hall. When the judge learned of this activity, he called both Duvall and Whelan into his chambers, confiscated the sketches and issued another verbal order. No court reporter was present during this meeting, but the judge later stated that he

> made explicit the direction that no sketches for publication of proceedings in the courtroom or its environs were to be made, even though such sketches were made not in the courtroom or its environs but from memory. . . .[1]

After this order, the artist did not re-enter the courthouse, but later sketched the trial participants from memory, based on her observations both inside and outside of the courtroom. Four of the sketches were televised on the CBS Morning News on June 22, 1973. On July 7, CBS was adjudged guilty of having defied the district court's order.[2]

The judge later issued two other orders pertaining to sketching. On July 12, an order was entered promulgating a number of rules applicable only to the "Gainesville Eight" case. The following day the judge entered another order identical in substance to the sketching provisions of the previous day's order, but which was intended to supplement the local rules applicable in the district court.[3] The order of July 13 reads:

> During the progress of or in connection with any judicial proceedings now or hereafter pending before the undersigned . . . sketching in

1. This quotation, as well as the preceding statement attributed to the court, appears in the "Notice of Hearing and Order to Show Cause" issued on June 27, 1973. The June 20 orders were first reduced to writing in the show-cause order.

2. The appeal from the criminal contempt conviction is considered in a separate opinion, United States v. Columbia Broadcasting System, Inc., 5 Cir. 497 F.2d 107.

3. The order purports to supplement Local Rule 16 which proscribes radio and television broadcasting from the courtroom. However, there is no indication that a copy of the amendment was sent to the Supreme Court as required by F.R.Civ.P. 83, hence the July 13 order does not appear to have been properly promulgated as a local court rule.

the courtroom or its environs, whether or not court is actually in session, is prohibited.

This order extends to and prohibits the publication of any sketch of the courtroom or its environs or any proceedings therein, regardless of the place where such sketch is made.

CBS immediately appealed, and both CBS and NBC sought writs of mandamus to require the district judge to vacate the parts of the July 12 and 13 orders which restricted sketching. On July 20 we suspended the effect of the orders and held the mandamus petitions in abeyance pending resolution of this appeal.

The orders issued by the district court present two distinct issues. First we must examine the constitutionality of the order banning the *publication* of sketches, regardless of whether the sketches were made in the courtroom, its environs, or elsewhere. Then we must consider the prohibition on sketching itself in the courtroom or its environs during any judicial proceedings.

■ At the outset we wish to make clear that it is not our intention to deprecate the efforts of the district court in attempting to maintain the dispassionate forum essential for a fair trial. A heavy obligation rests on trial judges to effectuate the fair-trial guarantee of the Sixth Amendment:

> Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to insure that the balance is never weighed against the accused.

Sheppard v. Maxwell, 1966, 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600. Nor are we unmindful of the difficult problems confronting the court in this particular case. The trial judge's concerns were summarized in the statement accompanying the July 12 order:

There has been a great deal of publicity concerning this case and, in all probability and likelihood, there will continue to be. Moreover, it is clear that defendants are actively seeking publicity and in so doing are trying to place before the public, including persons who are potential jurors, their own version of the merits of the case. In the material on file they make statements such as: That they are not guilty and that the government brought the prosecution for the purpose of attempting to destroy the VVAW [Vietnam Veterans Against the War]; that the time prior to trial would be spent in educating the jury and the people through the media that the trial is a farce, a political repression and a political trial; that the indictments should be dropped and that the "illegal use of the federal Grand Jury system" by the Nixon administration be discontinued. That this conduct, if continued, might be prejudicial to a fair and impartial trial cannot be doubted.

■ However, to recognize that the trial court is obligated to take "stong measures" to protect the rights of the accused is but the first step in our consideration of the validity of the publishing ban. The difficulty, of course, is that a countervailing constitutional guarantee, freedom of the press, must also be taken into account. Happily, our task is made easier by a recent decision of this Court, authored by Chief Judge Brown, which thoroughly examines the delicate balance between the First and Sixth Amendments in the context of a judicial ban on publication. United States v. Dickinson, 5 Cir. 1972, 465 F. 2d 496. That case stands for the proposition that before a prior restraint may be imposed by a judge, even in the interest of assuring a fair trial, there must be "an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil." Craig v. Harney, 1947, 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546.

*See also* Wood v. Georgia, 1962, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569; Bridges v. California, 1941, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192.

We entertain no doubt that the publication ban in the case before us must be measured in the terms of this high standard. If there was ever any question that the free-press guarantee encompassed more than the written word, it was dispelled by the decision in Joseph Burstyn, Inc. v. Wilson, 1952, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098, which extended First Amendment protection to motion pictures. The prior restraint standard cannot be avoided by the Government's suggestion that this case involves only a "minor restriction prohibiting the publication of certain sketches." True, we are not confronted with the kind of blanket restraint condemned in cases such as New York Times v. United States, 1971, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822; Bantam Books, Inc. v. Sullivan, 1963, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584, or *Dickinson, supra,* but we know of no authority for the proposition that First Amendment standards can be "tempered" according to the degree of the restraint imposed.

In testing the prior restraint imposed by the district judge, we have the additional guidance of the Kaufman Committee Report,[4] a study by a group of judges charged with the responsibility of making suggestions to implement the fair-trial mandate of Sheppard v. Maxwell, *supra,* without unnecessary infringement on the freedom of the press. The court below properly employed several of the recommendations of the Report concerning highly publicized trials. By imposing the ban on the publication of sketches, however, the district court disregarded the express caveat of the Report:

> The Committee does not presently recommend any direct curb or restraint on publication by the press of potentially prejudicial material. Such a curb, it feels, is both unwise as a matter of policy and poses serious constitutional problems.

45 F.R.D. at 401–402.

Despite that warning, the Government now urges that the constitutional obstacles to a direct restraint on publication can be overcome. In arguing that the sketching ban is not an invalid restraint under the First Amendment, the Government relies heavily on the Supreme Court's decision in Estes v. Texas, 1965, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543. In that case the Court held that live telecasting from the courtroom had deprived the defendant of a fair trial, partly because of the potentially prejudicial "awareness" of the trial participants that the proceedings were being broadcast. The Government urges that we focus on the "awareness" aspect of the *Estes* decision to conclude that sketching is merely "unnecessary dramatization" which raises the same danger of prejudice and justifies the publication prohibition.

We are not persuaded, however, that the impact of being sketched for later publication can be equated with the uniquely prejudicial impact of telecasting. Mr. Chief Justice Warren commented on the problem of distraction occasioned by television in the *Estes* trial, even after a special television booth had been constructed at the rear of the courtroom:

> It was impossible for any of the trial participants ever to be unaware of the presence of television cameras in court for the actual trial. The snouts of the four television cameras protruded through the opening in the booth, and the cameras and their operators were not only readily visible but were impossible to ignore by all who were surveying the activities in the small courtroom. No one could forget that he was constantly in the focus of the "all-seeing eye."

---

4. Report of the Committee on the Operation of the Jury System on the Free Press-Fair Trial Issue, 1968, 45 F.R.D. 391.

*Id.* at 568 (concurring opinion) (footnote omitted). By contrast, sketching requires only a writing instrument and sketch pad and can be done quite unobtrusively, or even, as in this case, from memory completely outside the courthouse.

■ Aware of these differences in physical distractions, the Government suggests that we consider the more subtle psychological implications of the "awareness" of being sketched. We agree that such factors cannot be ignored, but disagree that we must reach the same result as the *Estes* Court, even though we approach the problem in the same pragmatic fashion.

Recognizing that television can shape public sentiment and thereby affect the trial participants, Mr. Justice Clark in *Estes* rejected the contention that the psychological factors had to be disregarded because they were "purely hypothetical." Instead, he examined the response of the nation's courts to the supposed dangers of televised trials and found that psychological considerations, although difficult of ascertainment, were "real enough to have convinced the Judicial Conference of the United States, this Court and the Congress that television should be barred in federal trials by the Federal Rules of Criminal Procedure; in addition they have persuaded all but two of our States to prohibit television in the courtroom." *Id.* at 550. From such uniform disapproval of the practice, the Court concluded that to permit the use of television in the courtroom would be "inconsistent with our concepts of due process in this field." *Id.* at 544.

■ An examination of the position of the various courts on sketching suggests precisely the opposite conclusion from that reached by the *Estes* Court. To our knowledge, *no* state or federal court has prohibited the publication of sketches. Of the eighty federal district courts which have written rules, only three [5] have provided, pursuant to a suggestion in the Kaufman Committee Report, that in certain widely publicized cases the court may direct "that the names and addresses of jurors or prospective jurors not be publicly released except as required by statute, and that no photograph be taken or sketch made of any juror within the environs of the court." 45 F.R.D. 410–411. We express no views, of course, on the wisdom or validity of such rules, but mention them only to demonstrate that virtually no courts have found it necessary to restrict the publication of sketches. It is also significant that those jurisdictions which have regulated sketching have done so in very narrowly drawn circumstances. Even if we were to determine that sketching presented a danger sufficient to warrant a prior restraint, it is basic constitutional law that the limitation can be no broader than necessary to accomplish the desired goal. *See e. g.,* Shelton v. Tucker, 1960, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231; Dorfman v. Meiszner, 7 Cir. 1970, 430 F.2d 558.

■ In the matter *sub judice,* even though the district court was legitimately concerned with preventing prejudicial publicity from poisoning the impartial atmosphere essential to a fair trial, we conclude that the total ban on the publication of sketches is too remotely related to the danger sought to be avoided, and is, moreover, too broadly drawn to withstand constitutional scrutiny. We hold, therefore, that the portions of the district court's orders which ban the publication of sketches are unconstitutional.

■ Turning now to the second issue in this appeal, we further hold that in the circumstances of this case the rule which forbids in-court sketching is also invalid. In so doing, we do not question the power of the district court to issue orders regulating conduct in the courtroom. Ordinarily the trial judge has extremely broad discretion to control courtroom activity, even when the re-

5. By local rule, the following district courts have adopted the language quoted in the text: S.D.Ind., Rule 29(5); D.Minn., Rule 7(c)(5); and W.D.Okla., Rule 26(m)(5).

striction touches on matters protected by the First Amendment. *Seymour v. United States,* 5 Cir. 1967, 373 F.2d 629. We are unwilling, however, to condone a sweeping prohibition of in-court sketching when there has been no showing whatsoever that sketching is in any way obtrusive or disruptive.[6] As noted earlier, some districts have adopted narrowly drawn rules applicable only to highly publicized cases. Though this is not the appropriate occasion to pass on the constitutionality of more limited restrictions, we are firmly of the view that the restraint imposed by the court below is overly broad and thus invalid. *See Shelton* and *Dorfman, supra.*

Orders vacated.

---

6. American Bar Association Canon 35 would not permit in-court sketching. Only two states, New Jersey and Rhode Island, have adopted that provision of Canon 35, however, and just recently the Supreme Court of New Jersey decided as a matter of policy that the ban should be lifted. In re Application of National Broadcasting Co., Inc., 64 N.J. 476, 317 A.2d 695, M-210, April 3, 1974. The state supreme court noted that on the date of its decision the new Code of Judicial Conduct of the American Bar Association, which contains no sketching prohibition, became effective in New Jersey and replaced the Canons of Judicial Ethics.