339 So.2d 181 (1976)
In re the ADOPTION OF PROPOSED LOCAL RULE 17 OF the CRIMINAL DIVISION OF THE CIRCUIT COURT OF the ELEVENTH JUDICIAL CIRCUIT of Florida.
No. 48666.
Supreme Court of Florida.
October 21, 1976.
*182 Allan Milledge and Richard L. Horn of Milledge, Horn & Hermelee, Miami, for Sunbeam Television Corporation, WCKT, Miami; Wometco Enterprises, Inc., WTVJ, Miami; Post-Newsweek Stations, Florida, Inc., WPLG, Miami; and Coral Television Corporation, WCIX-TV, Miami, Intervenors.
ADKINS, Justice.
The Chief Judge of the Eleventh Judicial Circuit has requested that we approve proposed Local Rule 17 of the Criminal Division of the Circuit Court, as required by Fla.R.Civ.P. 1.020(e). We have jurisdiction. Article V, Section 2, Florida Constitution.
The proposed Local Rule 17 reads as follows:
"Broadcasting, televising, recording or taking photographs of any kind are prohibited on any floor of the Metropolitan Justice Building on which proceedings before the Circuit Court, Criminal Division are conducted."
In his petition, the Chief Judge gave a history leading to the approval of the Rule by the judges of the Circuit Court.
There was considerable difficulty among the judges with television lights and noise in the corridors and halls of the Metro Justice Building. Photographers were shooting pictures through the doors and into the courtrooms. The Administrative Judge of the Criminal Division issued an administrative directive on February 3, 1975, which he said was "a similar directive as that in force by the local United States District Court." The directive provided that,
"[U]ntil further notice, no photographic equipment of any kind, including television cameras, shall be permitted on the fourth floor of the Justice Building or within 25 feet of any Courtroom on any other floor of the Justice Building when such Courtroom is being used as a Circuit Courtroom."
The Administrative Judge explained that he had "persistent and consistent difficulties" enforcing Fla.R.Crim.P. 3.110, which reads as follows:
"The taking of television pictures or other photographs in or of the courtroom during the progress of judicial proceedings or radio broadcasting of judicial proceedings from the courtroom shall not be permitted by the court."
After a conference with the news media in Dade County, the Administrative Judge issued an amended directive which reads as follows:
"The press may freely photograph on the fourth floor of the Justice Building and other portions of the Justice Building used by the Circuit Court, under the following restrictions:
"1. No photographing will take place if such causes sounds which are audible within the courtroom or produces bright lights that are visible from within the courtroom and which disturbs the operation of the Court in any way.
"2. Photographers or reporters will not obstruct or impede in any way the progress of persons on their way to or from the courtrooms."
The directive expressly provided that it should not be construed as a waiver by the *183 press of any of its rights concerning photographing in or about the courtroom.
The Chief Judge had a conference with the news media on November 13, 1975, and, following general discussion, prepared and circulated a list of ten guidelines concerning photographs and reporters in the Metro Justice Building. These guidelines, which seem to be appropriate, read as follows:
"1. Photographers or reporters will not obstruct or impede in any way the progress of persons on their way to or from the courtroom.
"2. There will be no shouting, running or pushing in halls or corridors.
"3. Interviews, where and when possible, will be photographed and conducted in the vacant area behind the reception/information desk on each floor.
"4. Proper respect will be accorded the dignity of persons in trouble and those associated in their problems.
"5. Photographing and interviewing will be done in such fashion as to cause minimum noise and light disturbance in the halls, corridors and courtrooms. A sincere attempt will be made to confine these activities to the area in front of the elevators.
"6. Photographers will give vigilant consideration to the privacy of courtrooms and the necessity for the restrained use of lights in their immediate area.
"7. Efforts will be made to cover the panel glass over the wooden, inner courtroom doors and consideration will be given to carpeting the main public corridor.
"8. Each station will conduct a continuous training and instruction program with its personnel so that all are aware of rules and procedures in effect.
"9. All reporters will recognize, and acknowledge with compliance, the lawful orders of any Judge respecting order or control of persons in the halls or corridors.
"10. Violations of these guidelines, or acts which cause disturbances in the operation of the courts, will be reported to those causing same and to their employers so that corrective action can be taken and blanket sanctions will not have to be imposed."
On December 3, 1975, the Chief Judge met with the judges serving in the Criminal Division. It was then decided that the adoption of the proposed Local Rule 17 would be the best solution to the problem. The Local Rule was approved by the judges and has been submitted to this Court for approval.
Four television stations were allowed to intervene and oppose the adoption of the Rule.
Canon 3A(7) of the Code of Judicial Conduct provides:
"A judge should prohibit broadcasting, televising, recording, or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, ... ."
The news media argue that the proposed ban affects a broad area beyond the courtroom itself and interferes with their right to gather news. It is fundamental that news gathering qualifies for First Amendment protection, for a ban upon news gathering could effectively destroy freedom of the press. See Branzburg v. Hayes, 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). The news media relies upon United States v. Columbia Broadcasting System, Inc., 497 F.2d 102 (5th Cir.1974), where an order of a District Court prohibiting both in-court sketching and the publication of sketches of courtroom scenes was set aside. The Circuit Court of Appeals held that both aspects of the order were unconstitutionally overbroad. In its opinion the Court said:
"[B]efore a prior restraint may be imposed by a judge, even in the interest of assuring a fair trial, there must be `an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil.' Craig v. Harney, 1947, 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546. See also Wood *184 v. Georgia, 1962, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569; Bridges v. California, 1941, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192.
"We entertain no doubt that the publication ban in the case before us must be measured in the terms of this high standard. If there was ever any question that the free-press guarantee encompassed more than the written word, it was dispelled by the decision in Joseph Burstyn, Inc. v. Wilson, 1952, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098, which extended First Amendment protection to motion pictures. The prior restraint standard cannot be avoided by the Government's suggestion that this case involves only a `minor restriction prohibiting the publication of certain sketches.' True, we are not confronted with the kind of blanket restraint condemned in cases such as New York Times v. United States, 1971, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822; Bantam Books, Inc. v. Sullivan, 1963, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584, or Dickinson, supra [United States v. Dickinson, 5 Cir.1972, 465 F.2d 496], but we know of no authority for the proposition that First Amendment standards can be `tempered' according to the degree of the restraint imposed.
* * * * * *
"Even if we were to determine that sketching presented a danger sufficient to warrant a prior restraint, it is basic constitutional law that the limitation can be no broader than necessary to accomplish the desired goal. See e.g., Shelton v. Tucker, 1960, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231; Dorfman v. Meiszner, 7 Cir.1970, 430 F.2d 558.
"In the matter sub judice, even though the district court was legitimately concerned with preventing prejudicial publicity from poisoning the impartial atmosphere essential to a fair trial, we conclude that the total ban on the publication of sketches is too remotely related to the danger sought to be avoided, and is, moreover, too broadly drawn to withstand constitutional scrutiny. We hold, therefore, that the portions of the district court's orders which ban the publication of sketches are unconstitutional." 497 F.2d at 104-106.
Any direct restraint by government upon First Amendment freedoms of expression and speech must be subjected by the courts to the closest scrutiny, and the government carries a heavy burden of showing a justification of its imposition. See Columbia Broadcasting System, Inc. v. Young, 522 F.2d 234, 238 (6th Cir.1975).
This Court in Brumfield v. State, 108 So.2d 33 (Fla. 1958), recognized the general proposition that freedom of the press includes photographic media.
The comment to the proposed Rule states that the sole reason for its enactment is essentially to define the term "areas immediately adjacent thereto" as contained in Canon 3A(7) of the Code of Judicial Conduct so that the Canon may be administered by the Criminal Division of the Court. The judges state that it is impossible to specify any areas on the floor of the Metro Justice Building where courtrooms are located which are not, in fact, areas immediately adjacent to the courtrooms. The comment then contains the following:
"The Court is of course mindful of its concomitant duties to preserve the dignity of the judicial process and the rights of those who appear before it. It is similarly mindful of the constitutional rights of members of the public to information concerning the judicial process and of the rights and duties of all the media responsibily [sic] to present that information to them. The balancing of these sometimes competing interests is a delicate and difficult task. In our State, however, as in virtually every other, that process, as undertaken by the Supreme Court of Florida, has resulted in the enactment of the Canon in question. Even if the personal views of members of this Court were otherwise, the Court has no choice but to enforce, through means it deems fair and effective, this provision of the law."
A few representatives of the news media have abused their First Amendment *185 constitutional rights so as to interfere with the dignity of the judicial process and the rights of those who appear before the Court. However, the misconduct of a few does not authorize the imposition of a ban upon the entire media. Before such a ban is imposed there must be "an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil." United States v. Columbia Broadcasting System, Inc., supra, quoting Craig v. Harney, 331 U.S. 367, 376, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947). There being no immediate peril, the proposed Rule infringes upon First Amendment rights.
Also, the proposed Rule is too broad in that there are available reasonable alternatives which have a lesser impact on First Amendment freedoms.
We recognize the efforts of the judges in the Criminal Division of the Eleventh Judicial Circuit Court to preserve the dignity of the judicial processes, as well as the First Amendment rights of the news media. They have assumed this awesome responsibility with fairness and good motives, but alternatives should be sought so that the necessity for determining violators will not require numerous hearings. Accordingly, proposed Local Rule 17 is not approved.
It is so ordered.
OVERTON, C.J., and BOYD, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
ROBERTS, J., dissents with an opinion.
ROBERTS, Justice (dissenting).
I have long been committed to the protection of the constitutional rights of press freedom and have authored more opinions for this Court supporting that view than any other member of the Court as now constituted. See: Ross v. Gore, 48 So.2d 412 (Fla. 1950); Jacova v. Southern Radio & Television Co., 83 So.2d 34 (Fla. 1955); Abram v. Odham, 89 So.2d 334 (Fla. 1956), and Florida Publishing Co. v. Fletcher, Fla., 340 So.2d 914, opinion filed October 7, 1976. Those four opinions clearly express my support of a free press. However, it was not then and is not now my view that news reporters are above the law. In my opinion, they have the same obligation to respect the law as any other citizen. Furthermore, I belong to the old fashioned school that decorum in the courtroom is essential to the administration of justice and that the presiding judge has a wide discretion in maintaining order and decorum. The majority opinion gives some idea of the flagrant abuses being imposed upon some of the courts in Dade County and which require some form of corrective measures. The facts set forth in the majority opinion defeat the wisdom of the judgment.
The vast majority of news reporters are courteous, cooperative and willing to comply with reasonable rules of decorum but as to those few who are not, the trial court should have, in my opinion, the authority to take such steps as are necessary to maintain decorum in the courtroom and a fair trial for the defendant. Since the majority view, in my opinion, puts the right of a few noisy reporters above the right of a defendant to a fair trial, I am unable to agree with it.