**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edwin L. CABRA and Claude "Buddy" Leach, Defendants-Appellants.**

No. 79–4063

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

July 25, 1980.

Michael S. Fawer, Matthew H. Greenbaum, New Orleans, La., for Cabra.

William H. Jeffress, Jr., Seth P. Waxman, Washington, D. C., for Leach.

J. Ransdell Keene, U. S. Atty., Shreveport, La., for United States.

Before AINSWORTH, FAY and RANDALL, Circuit Judges.

AINSWORTH, Circuit Judge:

This appeal raises the novel question whether a district judge can impound notes taken during a criminal trial by a paralegal

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

employed by defense counsel to assist in preparation of the defense. We hold that in this case, the district judge acted improperly in impounding the notes.

Appellants Edwin L. Cabra and Claude "Buddy" Leach were tried in district court on charges of vote buying in connection with the November 7, 1978 general election. After three weeks of trial, appellants were acquitted on all counts.[1] Other charges against Leach alleging illegal receipt of campaign contributions are still pending.

During the trial, the district judge, on his own motion, called a bench conference to ask defense counsel if anyone associated with the defense was taking notes of the proceedings. Defense counsel informed the court that Ms. Mary Jane Marcantel, a paralegal employed by the defense, was taking shorthand notes of portions of the testimony. Counsel stated that the purpose of the note-taking was to assist in the preparation of cross-examination, to provide summaries of testimony, and to aid in the preparation of the defense in anticipated criminal prosecutions in related cases. Ms. Marcantel was not present during the entirety of the trial and thus her notes did not reflect a complete account of the proceedings. The shorthand notes were not verbatim, but merely reflected, as accurately as possible, the substance of the testimony.

After ascertaining the character of the notes,[2] the district judge, over defense

1. Because appellants were acquitted, the United States has not filed a brief in this case and claims no interest in the outcome. The Assistant United States Attorneys handling the matter moved this court to withdraw their appearances. The unopposed motion was granted on May 19, 1980.

2. The relevant colloquy between the district judge, Mr. Jeffress (attorney for appellant Leach), Mr. Fawer (attorney for appellant Cabra), and Mr. Lydick (Assistant United States Attorney), reads as follows:

MR. JEFFRESS: Well, if the Court please, I would ask permission that Ms. Marcantel, who is a paralegal, who has been working with us on this case, be permitted to take notes during the testimony.

MR. LYDICK: Are these verbatim notes?

MR. FAWER: I don't really know. I would hope she—we are taking notes so we will have some accurate guide.

MR. LYDICK: My only observation is that when we had originally talked about the transcript for trial, we were talking about getting an outside reporting service. Apparently, that did not work out.

MR. FAWER: Correct. Too expensive.

THE COURT: You have an equivalent of a verbatim—

MR. FAWER: No, sir. These are notes that are not being turned into a transcript that someone is going to submit as an official record. These are notes so that basically between us we can listen and we have some notes that we can rely on as to what the witness has said. I do not know to what extent Mr. Richardson, sitting at counsel table—I see he is writing like crazy. I don't know whether he is able to take shorthand or not. I don't really care. I join in Mr. Jeffress' request that we have somebody in the courtroom who is taking notes perhaps faster than we can because I am not skilled in shorthand.

THE COURT: Well, all right. I will grant permission to take notes provided her notes and the transcript of her notes are turned in at the close of the trial.

MR. JEFFRESS: Judge, we certainly object to that.

THE COURT: Well, Gentlemen, let me explain why. There can only be one official transcript.

MR. FAWER: Of course.

THE COURT: And the question of when you have a person who is attempting to take down verbatim, we will not get into a dispute between what that person takes and the official court reporter takes. Now, I am telling you that if you wish for her to continue that I will require that you turn it in and the Court will order it sealed.

MR. FAWER: I have no real objection but I don't know how we could have a problem.

THE COURT: Mr. Fawer, I am suggesting that I will grant your request to allow her to do it provided that at the conclusion of the case that it be turned in and sealed. I do not intend to look at it, nor do I intend to allow anybody else to look at it. But I want verbatim notes taken by anyone to be turned in at the conclusion of the trial and sealed.

MR. FAWER: I assume we are trying to take verbatim notes, too. I just want Your Honor to understand that we are trying to take verbatim notes.

MR. JEFFRESS: Is Your Honor saying it must be turned in so that notes or copies thereof will not be available to prepare for other trials or anything else?

THE COURT: Well, that's right, Gentlemen. I am trying to make it clear that when someone else attempts to take a verbatim transcript of the proceedings, it is not allowed except upon permission of the Court. Now, I am not going to go into detail of why I think it should be

counsel's objection, ordered that Ms. Marcental could continue to take notes but that at the completion of trial the .notes were to be submitted to the court and sealed. After trial, the district judge sent a letter requesting compliance with the order. Appellants moved to vacate the order and filed a memorandum of law supporting their position. The district judge denied the motion, but stayed the order pending this appeal.

The district judge based the order on the court's duty "to insure the orderly process of a case." He stated that since the notes could be considered as an unofficial transcript the validity of the official transcript was at stake. "The court feels that there should only be one official transcript and that such unofficial transcripts should not be allowed. The court by this does not mean that these particular defendants would make any improper use of these notes. Rather this order is required to protect the integrity of the official court reporter's transcript." (R. 1140)

■ A district judge has the power to issue appropriate orders regulating conduct in the courtroom in order to assure an orderly trial. *See, e. g., United States v. Columbia Broadcasting System, Inc.*, 497 F.2d 102, 104 (5th Cir. 1974); *Seymour v. United States*, 373 F.2d 629 (5th Cir. 1967). *See also United States v. Dinitz*, 538 F.2d 1214, 1223–24 (5th Cir. 1976), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977). Often the basis of the power is the need to insure that a defendant obtains a fair trial free from unnecessary disruption. *See United States v. Schiavo*, 504 F.2d 1, 6 (3d Cir.) (*en banc*) ("The Sixth Amendment imposes a duty on the district courts . . . to take reasonable measures to ensure defendants fair trials, free of prejudice and disruption"), *cert. denied sub nom. Ditter v. Philadelphia Newspapers, Inc.*, 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974). *See generally Sheppard v. Maxwell*, 384 U.S. 333, 349–51, 86 S.Ct. 1507, 1515–16, 16 L.Ed.2d 600 (1966).

■ This case is similar to the facts presented in *Columbia Broadcasting System*. There, the district court issued an order prohibiting any sketching of the proceedings. Sketches were made by artists employed by the media for subsequent showing on television news programs. This court, while acknowledging the district court's power to control its proceedings, rejected the order as overly broad. "We are unwilling . . . to condone a sweeping prohibition of in-court sketching when there has been no showing whatsoever that sketching is in any way obtrusive or disruptive." *Columbia Broadcasting System, supra*, 497 F.2d at 107 (footnote omitted). As in *Columbia Broadcasting System*, we can-

---

turned back in. Now, certainly if you need it for further purposes, upon a simple request the Court will grant the request for the use of it provided that under no circumstances it is attempted to be used to substantiate what actually occurred in court.

MR. FAWER: Your Honor, Ms. Marcantel is not trying to take notes of the entire proceedings. So it is not as if we expect her or even asked her to take notes from beginning to end. It's not like that. There are portions of certain witnesses of whom she just takes notes, as well as us. The way she takes notes—

THE COURT: Mr. Fawer, I think you gentlemen are misunderstanding what I am saying. I am saying when she takes whatever portion she takes, if she is attempting to take a verbatim transcript of the proceedings, I am giving you permission to do it under certain conditions.

MR. FAWER: I understand and I assume, I assume the way you clarified—

THE COURT: I am going to let you continue as you have requested, without objection, that you may do that and you may use it for this trial. At the conclusion of the trial I am requiring the shorthand notes and all copies to be turned into the clerk's office under my order that they be sealed.

MR. FAWER: All right.

THE COURT: Now, if you should need them at some future date, upon good cause shown, the Court will be happy to order that you receive them.

MR. FAWER: The answer is, Your Honor, from my point of view, I am perfectly willing to comply with Your Honor's request even though I think it is improper. I would, immediately upon conclusion of the trial and having complied with your request, formally object to the Court above you because I think there is no basis for Your Honor sealing our work product.

THE COURT: Thank you, sir.

 

not understand how Ms. Marcantel's note-taking resulted in any disruption of the courtroom proceedings. There is no evidence that her work had any disturbing or disruptive effect. It appeared that her actions did not differ from the note-taking activities of the press covering the trial or of opposing counsel. Certainly, the note-taking did not interfere with or infringe appellants' rights to a fair trial as the task was performed on their behalf.

The district court placed great weight on the fact that Ms. Marcantel's notes were verbatim. There is no evidence, however, that this was true. Defense counsel stated that the notes were incomplete and that while Ms. Marcantel strived for accuracy, the notes were not always taken in question and answer form. Even assuming that the notes were verbatim, however, we do not believe that the district judge's action was proper. Note-taking at trial is an acknowledged function of paralegals, *see* W. P. Statsky, *Introduction to Paralegalism* 356 (West 1974). A court should not penalize a party on account of the proficiency of its paralegal's performance. The district court's concern for the sanctity of the official transcript is misplaced. While it is the court's responsibility to assure that the official transcript is prepared in accordance with the Court Reporter's Act, 28 U.S.C. § 753, *see United States v. Garner*, 581 F.2d 481, 488 (5th Cir. 1978), the Act explicitly states that "[n]o transcripts of the proceedings of the court shall be considered as official except those made from the records taken by the reporter." Moreover, defense counsel stated that they had no intention of relying on the notes as an official summary of the testimony. Thus, the district court was operating under the mistaken assumption that the paralegal's notes challenged the validity of the official transcript.

Since the district court's reasons for impounding the notes were based on unwarranted concerns, the order was an improper exercise of the court's discretionary authority to control courtroom proceedings. Accordingly, the order is reversed.[3]

REVERSED.

---

**3.** Appellants' position is that the impoundment order violated the First Amendment guarantee of freedom of expression and the Sixth Amendment guarantee of a public trial. As the Supreme Court stated, "[w]hat transpires in the courtroom is public property." *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947). *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 567–68, 96 S.Ct. 2791, 2807, 49 L.Ed.2d 683 (1976). While it is clear that constitutional issues are implicated in this case, we need not reach those matters in light of our holding that the order exceeded the district court's discretionary authority.

