632 So.2d 1072 (1994)
TIMES PUBLISHING COMPANY, Petitioner,
v.
State of Florida, Mark Kohut, and Charles Rourk, Respondents.
No. 93-2508.
District Court of Appeal of Florida, Fourth District.
February 16, 1994.
*1073 Patricia Fields Anderson, George K. Rahdert and Alison M. Steele of Rahdert & Anderson, St. Petersburg, for petitioner.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol M. Dittmar, Asst. Atty. Gen., Tampa, for respondent-State.
Julianne M. Holt, Public Defender, and Mark G. Rodriguez, Asst. Public Defender, Tampa, for respondent-Mark Kohut.
WARNER, Judge.
This case came before us on an emergency petition for writ of certiorari to review an order prohibiting the media from publication or dissemination of certain information obtained during the process of jury selection in the trial of respondents Kohut and Rourk.[1] For the following reasons we quash the order in part.
The petition was filed in this court on Monday morning, August 23, 1993, as jury selection commenced in the Kohut/Rourk trial in Palm Beach County. The petition requested review of an August 6, 1993, order restricting the media from dissemination or publication of certain information obtained during the jury selection process. It was filed as an emergency petition because of the commencement of the trial. We expedited a response, but the petitioner informed us that transcripts of the hearings preceding the entry of the order could not be available on an expedited basis. Therefore, petitioner did not provide us with a record on which to rule prior to the end of jury selection, which made the issues as to this particular jury selection moot. However, because the errors are capable of repetition but evading review we address the issue raised. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 546-548, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683, 690 (1976).
The defendants were on trial for attempted murder, armed kidnapping, and robbery which occurred in Hillsborough County, Florida, in January 1993. The case drew widespread publicity particularly in the Tampa area. Earlier this year trial was commenced in Hillsborough County but after attempting for nine days to impanel a jury to decide the case, the trial court granted a change of venue to the Fifteenth Judicial Circuit.
Because of the experience with jury selection in Hillsborough County, the defendants filed a motion for individual confidential voir dire which requested, in part, that the media not identify any potential juror either by "identifying information" or by photograph. As a result of several hearings at which representatives of the media, including petitioner, were present, the trial court entered an order, the substance of which included the following provisions:
1. The clerk of this Court shall not release to any person the names, addresses, or any other identifying information concerning *1074 potential jurors in this cause, except as provided herein. Trial Counsel for the parties are hereby exempted from this provision and shall be given full access to potential juror information. Trial Counsel may use such information to investigate for the purposes of the voir dire process, but shall not reveal this information to anyone not a party to this action or a member of the trial counsel's litigation team. The Clerk may release at any time general information such as age, sex, race, and occupation, so long as said information cannot be used to identify a particular juror.
2. There shall be no dissemination or publication, through the print or electronic media, of any identifying information concerning any potential, excused, or sitting juror, obtained or learned about through the court proceedings. This shall not preclude the capturing of said information.
3. The media shall not in any manner transmit or disseminate photographs of any part of the anatomy of any potential, excused or sitting juror.
4. This Order is not intended as a "Gag Order" and the news media remains free, subject to the specific provisions of the Order, to report any events surrounding this cause.
5. This Order shall cease to be effective immediately upon the swearing and sequestration of a jury in this cause.
6. Copies of this Order shall be placed at the entrance to the courtroom so as to be available to all media representatives and a copy posted on the wall or door at [sic] entrance to the courtroom where either the jury selection or trial is being conducted.
Petitioner challenges sections 2 and 3 of the trial court's order. It claims that section 2 is an unconstitutional prior restraint on publication. Section 2 does not prohibit the media from attending the public trial, but it does prohibit the media from reporting what it sees and hears during jury selection if it involves facts which would be classified as "identifying information." We do not have to consider whether the phrase "identifying information" is unconstitutionally vague,[2] because it is well settled that once a public hearing is held, the media is free to publish what transpired therein and cannot be subjected to prior restraint with respect thereto. Nebraska Press Ass'n v. Stuart, 427 U.S. at 569, 96 S.Ct. at 2807, 49 L.Ed.2d at 703; Sheppard v. Maxwell, 384 U.S. 333, 362-63, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, 620 (1966); Craig v. Harney, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546, 1551 (1947); State ex rel. Miami Herald Pub. Co. v. McIntosh, 340 So.2d 904, 908-09 (Fla. 1976). Therefore, insofar as section 2 acts as a prior restraint on the publication or dissemination of information gathered during a public proceeding, it is unconstitutional and is quashed.
This is not to say that the trial court is without any authority to protect jurors under certain unusual circumstances. Indeed, petitioner has not attacked section 1 of the order which prevents disclosure by the clerk of the names or addresses of jurors. Similar orders requiring that the names of jurors be kept confidential in specific cases have been upheld in other courts. Gannett Co., Inc. v. State, 571 A.2d 735 (Del. 1989), cert. denied, 495 U.S. 918, 110 S.Ct. 1947, 109 L.Ed.2d 310 (1990). But if such information is gained in a public trial, there is no constitutional authority to prevent its dissemination.
Moreover, any prior restraint on publication must meet the stringent test of Nebraska Press Ass'n v. Stuart. Orders of prior restraint on publication come to the reviewing court with a heavy presumption against their constitutionality. 427 U.S. at 558, 96 S.Ct. at 2802, 49 L.Ed.2d at 697. The reviewing court must examine the evidence before the trial judge to determine: (1) the nature and extent of pretrial news coverage; (2) whether other measures would be likely to mitigate the effects of unrestrained pretrial *1075 publicity; and (3) how effectively a restraining order would operate to prevent the threatened danger. 427 U.S. at 563, 96 S.Ct. at 2804, 49 L.Ed.2d at 700.
Unfortunately, the record we received is lacking in several respects. The hearings held on this order did not include any presentation of evidence. Instead the defendants and the judge were working from the experience of the original Hillsborough County voir dire in which jurors apparently felt uncomfortable being in the glare of media coverage. Those proceedings are not part of this record. However, we cannot conclude that in this case the media coverage itself prevented the impaneling of a jury, given other problems which occurred during the voir dire process which also appear in the record. Furthermore, we do know that in response to the publicity and the thwarted voir dire in Hillsborough County, the judge moved the trial to Palm Beach County. There is nothing in the record to suggest that this relocation would not adequately mitigate any harmful effects of the media coverage in Tampa. There was no showing that the publicity of the trial in the Palm Beach area was so pervasive as to prevent a fair trial. Thus, the preventative measures adopted by the trial court do not withstand constitutional scrutiny in this case.
Petitioner also challenges section 3 of the order which prohibits it from transmitting or disseminating photographs of any part of the anatomy of any potential, excused or sitting juror. Section 3 is not limited to photographs obtained inside the courtroom but appears to prohibit photographs of jurors at any place. It is based on a finding that during prior jury selection prospective jurors were intimidated by the news media and its attempts to photograph the jury. Petitioner claims that the trial court did not make the necessary findings that photographing the individual jurors would have a substantial effect upon a particular individual which would be qualitatively different from the effect on members of the general public required by State v. Palm Beach Newspapers, Inc., 395 So.2d 544 (Fla. 1981). In that case the court was presented with a witness who refused to testify if cameras were present. We are not convinced that in the context of the selection of the jury it would be necessary to show particularized concern on the part of each prospective juror in order to preclude cameras from photographing the entire venire. But the order of the trial court is overly broad and the findings are insufficient to preclude the publication of those photographs.
Again, under the test of Nebraska Press Ass'n, this order is an unconstitutional prior restraint. We reiterate that because a trial is a public event, "[T]hose who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire [in] proceedings before it." Craig v. Harney, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546, 1551 (1947). If the media are allowed to take cameras into the courtroom, they are allowed to disseminate what they film.
The trial judge failed to consider alternative measures which would mitigate the effect on the jurors of the intense press coverage. For instance, the court, upon proper findings, may have considered limiting or even banning all cameras from the courtroom.[3] The inclusion of photographic or electronic media in a public trial is not mandated by the First Amendment. In re Petition of Post-Newsweek Stations, Florida, Inc., 370 So.2d 764, 774 (Fla. 1979). Secondly, if photographing of the venire outside the courtroom was a concern, the judge could have provided a special entrance and exit for jurors so they could avoid the media cameras.[4] Third, the respondents/defendants *1076 claim that one problem in the first voir dire was that members of the venire were permitted to watch television during breaks in the voir dire proceedings and saw news reports (including pictures of the prospective jurors, we presume) concerning the proceedings and upcoming trial. One solution to that problem is not to allow televisions in the venire room. Rather than exploring alternatives, the trial court simply used the draconian measure of prior restraint as a first resort instead of an absolute last resort.
While the record does not reveal all of the publicity surrounding the prosecution, we are not unaware of the nature of the crime and the racial overtones which appear to have anguished the Tampa Bay community. We can imagine that a media feeding frenzy was occurring, exacerbating the problems of selecting a fair and impartial jury. Nevertheless, the answer is not to prevent the media from publishing information. The role of a free press in informing the public of the workings of its government is essential to a democratic way of life. We must rely on alternative measures to protect the jurors and preserve the defendants' right to a fair trial. We must rely also on the integrity of the media whose first duty is to inform responsibly.
The extraordinary protections afforded by the First Amendment carry with them something in the nature of a fiduciary duty to exercise the protected rights responsibly  a duty widely acknowledged but not always observed by editors and publishers. It is not asking too much to suggest that those who exercise First Amendment rights in newspapers or broadcasting enterprises direct some effort to protect the rights of an accused to a fair trial by unbiased jurors.
Nebraska Press Ass'n, 427 U.S. at 561, 96 S.Ct. at 2803, 49 L.Ed.2d at 698.
Because of our disposition, we do not address the remaining issues raised by petitioner. We therefore quash sections 2 and 3 of the order under review.
DELL, C.J., and GUNTHER, J., concur.
NOTES
[1] Petitioner filed alternatively for a writ of mandamus which is not an appropriate avenue of relief and is denied.
[2] Without deciding the issue, we would point out that in Nebraska Press Ass'n, the Court held that a prohibition against all information "strongly implicative of the accused as the perpetrator of the slayings" was too vague and too broad to survive judicial scrutiny. 427 U.S. at 568, 96 S.Ct. at 2807, 49 L.Ed.2d at 702. A comparison may be made to the term "identifying information".
[3] Because of the transfer of the case to Palm Beach County, the record fails to show that the same concerns would have been present in Palm Beach County as caused the mistrial in Hillsborough County, nor is the record sufficient for us to assess whether banning cameras from the courtroom even in Hillsborough County was essential.
[4] Banning broadcasting and photographic media outside the courtroom itself is also strongly disfavored and would require an imminent threat, not merely a likely threat to the administration of justice. See In re Adoption of Proposed Local Rule 17 of the Criminal Div. of the Circuit Court of the Eleventh Judicial Circuit, 339 So.2d 181 (Fla. 1976). This record does not show an imminent threat to the administration of justice.