723 So.2d 275 (1998)
SUNBEAM TELEVISION CORPORATION, d/b/a WSVN/Channel 7, and Post-Newsweek Stations Florida, Inc., d/b/a WPLG/Channel 10, Petitioners,
v.
STATE of Florida and Humberto Hernandez, Respondents.
No. 98-1969
District Court of Appeal of Florida, Third District.
August 4, 1998.
Opinion Adopting Panel Dissent on Grant of Rehearing November 4, 1998.
Rehearing Denied January 13, 1999.
*276 Milledge & Iden and Allan Milledge and Dana J. McElroy; Mitrani, Rynor, Adamsky, Macaulay and Zorrilla and Karen Williams Kammer, Miami, for Petitioners.
Robert A. Butterworth, Attorney General, and Keith S. Kromash, Assistant Attorney General, for Respondents.
Before COPE, GODERICH and SORONDO, JJ.
Opinion Adopting Panel Dissent on Grant of Rehearing En Banc November 4, 1998.
SORONDO, J.
Sunbeam Television Corporation, d/b/a WSVN/Channel 7 and Post-Newsweek Stations Florida, Inc., d/b/a WPLG/Channel 10 (collectively, "the media") petition this Court for a writ of certiorari quashing the trial court's order prohibiting video photography of prospective or seated jurors in the criminal trial of former Miami Commissioner Humberto Hernandez, on charges of Fabricating Physical Evidence, Conspiracy to Fabricate Physical Evidence, and Accessory After the Fact.
According to the facts before us in this expedited matter, the trial judge advised a television reporter who was present at a hearing conducted on Thursday, July 30, 1998, that the court would be addressing the issue of limiting the media's ability to televise the trial in this case. Formal notice was provided to the media on the morning of Friday, July 31, 1998, for a 1:00 p.m. hearing. At oral argument before this court, counsel for the media indicated that they were not arguing a lack of notice as a ground for quashing of the order in question.
At the July 30th hearing, the trial judge announced:
I do know thatI have advised both parties that based upon discussions we had before, based upon the request made by the state, that I'm going to provide for basically protection, and for non-disclosure of the prospective jurors' identities or address.
At this point the media noted their objection to the court's intent and provided the judge with case law requiring both proper notice and an evidentiary hearing before the entry of such an order. See In re Petition of Post-Newsweek Stations, Florida, Inc., 370 So.2d 764 (Fla.1979); WFTV, Inc. v. State, 704 So.2d 188 (Fla. 4th DCA 1997). The judge then announced that he was conducting an evidentiary hearing and stated as follows:
Okay. I'm going to conduct an evidentiary hearing at this time. This Court will allow into evidence judicial notice of what it considers to be in the interest of the community.
This is a case of very intense public interest. This is a case that, basically, the media has a great deal of interest in, that the media at large has a great deal of interest in.
There have been numerous newspaper reports, numerous television reports.
And in fact, it's safe to say that there's a great deal of interest in this case. The prevention of the broadcasting of the identities of the individuals who will be participating in jury selection is for the purpose of assuring that when they are going about their business as jurors, and go back home, go out to dinner, go to church, synagogue, *277 go to Publix Supermarket, whatever, they are not accosted by people who will say to them, I saw you on television.
You are on this case, you are on the case trying Humberto Hernandez, and let me tell you this about that.
It's for that purpose, in and of itself, that that Court order has been entered.
It's a very slight infringement on the public at large, you will be present, the media will be present, the television cameras will be present, and they will be able to broadcast each and every event in this courtroom but for the juror's appearance.
They will not broadcast their faces, but the answers to questions provided to the Court, to the parties, will be a matter of public broadcast. You can go into that.
So, basically, the order is simply to prevent the disclosure of the identities of the jurors, which is something that is envisioned under the law, since the law allows the Court to prevent dissemination of a juror's name and address.
The media did not seek to present any evidence and concedes that the evidentiary hearing satisfied the requirements of Florida law. They argue here, as they did below, that the trial judge's order was error.
The state takes no position on the issue presented to this Court. Contrary to the trial judge's suggestion that his order was entered pursuant to the state's motion, the state asserts that it filed no such motion. At oral argument, the state advised this Court that during a previous hearing there might have been a general discussion about keeping the names and addresses of the jurors confidential, but that the state never requested the prohibition of video photography ordered by the trial judge. Further, the state indicated that it does not feel that such a measure is necessary to protect the integrity of the trial.
Both the State and the media now agree that the portion of the trial court's order which forbids the publication of the jurors' names and addresses is lawful. Accordingly, we deny that portion of the petition which seeks to quash this part of the order under review.
We now consider that portion of the trial court's order which prohibits the video photography of the jurors.
At the evidentiary hearing, the trial judge took judicial notice of the intense pre-trial publicity which has accompanied this case. In State v. Palm Beach Newspapers, 395 So.2d 544 (Fla.1981), the Florida Supreme Court reviewed an order excluding television coverage of two state witnesses during their trial testimony. Both witnesses were incarcerated. They provided affidavits which set forth their fear of reprisals in prison if it became public knowledge that they were cooperating with the state. In discussing the nature of a hearing which results in an order excluding the media, the Court stated:
Affidavits are sufficient to ground a trial court's determination that electronic media should be prohibited from covering the testimony of a particular witness. Indeed, a ruling can be supported by matters within the judicial knowledge of the trial judge, provided they are identified on the record and counsel given an opportunity to refute or challenge them.

Id. at 547 (emphasis added). The Court went on to say that "the dangers of in-prison violence ... may well be a matter judicially noticed ..." Id. In the present case, the judge was well within his right to judicially notice the publicity which has surrounded the voting fraud and related issues which are the gravamen of the charges against this defendant. The question presented here is whether that publicity and the trial judge's concern that unknown people may approach the jurors at restaurants, the market, church, synagogue, etc., is enough to support the order under review. We conclude that it is not.
In Post-Newsweek Stations, the Supreme Court determined that the petition for change in the code of judicial conduct, specifically Canon 3A(7), should be granted so as to allow the electronic media access to Florida's courtrooms. In re Petition of Post-Newsweek Stations, Florida at 765. In a lengthy opinion the Court considered the arguments made by the various interested parties. One of the arguments considered by the Court involved the psychological impact *278 upon the courtroom participants. One of the expressed concerns was that "jurors [would] either be distracted from concentrating on the evidence and the issues to be decided by them or, because of their identification with the proceedings, they [would] fear for their personal safety, be subjected to influence by members of the public, or attempt to conform their verdict to community opinion;" in short, virtually the same concerns expressed by the trial judge in the present case. The Supreme Court addressed this and other concerns and concluded that:
These are concerns that any fair minded person would share because they would, certainly in combination, be antithetical to a fair trial. The fact remains, however, that the assertions are but assumptions unsupported by any evidence. No respondent has been able to point to any instance during the pilot program period where these fears were substantiated. Such evidence as exists would appear to refute the assumptions.
Id. at 775. The Court went on to say that there could be circumstances where it would be appropriate to prohibit electronic media coverage of a particular trial participant. It left that decision to the sound discretion of the presiding trial judge to be exercised under the following standard:
The presiding judge may exclude electronic media coverage of a particular participant only upon a finding that such coverage will have a substantial effect upon the particular individual which would be qualitatively different from the effect on members of the public in general and such effect will be qualitatively different from coverage by other types of media.
Id. at 779. We agree with the Fourth District Court of Appeal's analysis in Times Publishing Co. v. State, 632 So.2d 1072 (Fla. 4th DCA 1994), that within "the context of the selection of the jury it would [not] be necessary to show a particularized concern on the part of each prospective juror in order to preclude cameras from photographing the entire venire." Id. at 1075. We do not believe, however, that the general concerns expressed by the trial judge in this case for prohibiting the video photography of jurors are sufficient to justify the prohibition imposed. The facts the judge took judicial notice of are true of all high-publicity criminal cases. To hold that such general concerns are sufficient to forbid the video photographing of jurors, where those same general concerns would not suffice to forbid the video photographing of witnesses, lawyers and/or judges, would elevate jurors to a special class of trial participant not contemplated by the Florida Supreme Court in Post-Newsweek Stations. The pre-trial publicity problems associated with high profile criminal cases, like the problems of jury intimidation and bribery, are not new and were undoubtedly considered by the Supreme Court in the exhaustive study which led to its decision in Post-Newsweek Stations. No special treatment was formulated for prospective or seated jurors.
The dissent argues that common sense dictates that "where an order forbidding disclosure of names and addresses is justified, it is also permissible to prohibit the photographing of jurors." We perceive a qualitative difference between the listing of jurors' names and addresses and the video photographing of jurors. Even if the media's cameras are present and recording throughout the entire trial, the actual footage broadcast on television rarely amounts to more than a few seconds. Accordingly, during the voir dire examination of over 100 potential jurors, very few will actually have their picture broadcast. As concerns the selected petit jurors, during the course of a criminal trial the issues of interest rarely concern jurors and media cameras are rarely trained upon them. But even if the pictures of jurors are broadcast, their faces will be recognized by the very small percentage of people who know them personally, and even those people may not know where the juror in question resides. On the other hand, publishing the names and addresses of jurors could expose them to unwanted telephone calls and visits from abusive and potentially threatening strangers.
We emphasize that there are circumstances where a trial judge can successfully enter an order like the one in this case. Moreover, we do not foreclose the trial judge *279 in this case from revisiting this issue if new facts requiring such measures should arise. Because the trial court's order fails to satisfy the standard set forth in Post-Newsweek Stations, we grant that portion of the Petition which seeks relief from the trial court's order prohibiting the video photographing of prospective and seated jurors and quash same.
GODERICH, J., concurs.
COPE, J. (dissenting).
All agree that in a high-publicity case like this one, the court has the power to forbid the disclosure of the names and addresses of prospective, and actual, jurors. This harks back to the Sheppard murder case, in which:
[T]he jurors were thrust into the role of celebrities by the judge's failure to insulate them from reporters and photographers. The numerous pictures of the jurors, with their addresses, which appeared in the newspapers before and during the trial itself exposed them to expressions of opinion from both cranks and friends.

Sheppard v. Maxwell, 384 U.S. 333, 353, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) (citation omitted; emphasis added).
The point of a nondisclosure order in a high-publicity case is to insulate the jurors from such influences. See id. This is accomplished by prohibiting disclosure of the identity of the jurors. If it is appropriate to prohibit disclosure of names and addresses, then it is also appropriate to prohibit the photographing and videotaping of the jurors' faces. A photograph when broadcast or published can disclose identity as effectively as publication of the juror's name and address.
The trial court in this case said:
THE COURT: Okay. I'm going to conduct an evidentiary hearing at this time. This Court will allow into evidence judicial notice of what it considers to be in the interest of the community.
This is a case of very intense public interest. This is a case that, basically, the media has a great deal of interest in, that the media at large has a great deal of interest in.
There have been numerous newspaper reports, numerous television reports.
And in fact, it's safe to say that there's a great deal of interest in this case. The prevention of the broadcasting of the identities of the individuals who will be participating in jury selection is for the purpose of assuring that when they are going about their business as jurors, and go back home, go out to dinner, go to church, synagogue, go to Publix supermarket, whatever, they are not accosted by people who will say to them, I saw you on television.
You are on this case, you are on the case trying Humberto Hernandez, and let me tell you this about that.
It's for that purpose, in and of itself, that that Court order has been entered.
It's a very slight infringement on the public at large, you will be present, the media will be present, the television cameras will be present, and they will be able to broadcast each and every event in this courtroom but for the jurors' appearance.
They will not broadcast their faces, but the answers to questions provided to the Court, to the parties, will be a matter of public broadcast. You can go into that.
So, basically, the order is simply to prevent the disclosure of the identities of the jurors, which is something that is envisioned under the law, since the law allows the Court to prevent the dissemination of a juror's name and address.
Transcript at 21-22.
Petitioner Sunbeam Television Corporation argues that the record is inadequate to support the order, but that is not so. The Florida Supreme Court has said that "a ruling can be supported by matters within the judicial knowledge of the trial judge, provided they are identified on the record and counsel given an opportunity to refute them." State v. Palm Beach Newspapers, Inc., 395 So.2d 544, 547 (Fla.1981). Such an opportunity was given here.
Sunbeam does not dispute that the instant criminal prosecution is, as stated by the judge, a matter of "very intense public interest." Based on findings of voting fraud, this court recently set aside the results of the last *280 City of Miami mayoral election, resulting in the ousting of Mayor Xavier Suarez and the seating of Mayor Joe Carollo. See In re the Matter of the Protest of Election Returns and Absentee Ballots in the November 4, 1997 Election for the City of Miami, Florida, 707 So.2d 1170, 1171-75 (Fla. 3d DCA), review denied, No. 92,735, 725 So.2d 1108 (Fla. Sept. 24, 1998). The instant criminal charges against former Miami City Commissioner Humberto Hernandez stem from the election investigation.[1]
Under Florida Rule of Judicial Administration 2.170(a), videotaping and still photography in the courtroom are "[s]ubject at all times to the authority of the presiding judge to: (i) control the conduct of proceedings before the court; ... and (iii) ensure the fair administration of justice in the pending cause...." The Florida Supreme Court has said:
[W]e can conceive of situations where it would be legally appropriate to exclude the electronic media where the public in general is not excluded.... However, we deem it imprudent to compile a laundry list or adopt an absolute rule to deal with these occurrences. Instead, the matter should be left to the sound discretion of the presiding judge to be exercised in accordance with the following standard:

The presiding judge may exclude electronic media coverage of a particular participant only upon a finding that such coverage will have a substantial effect upon the particular individual which would be qualitatively different from the effect on members of the public in general and such effect will be qualitatively different from coverage by other types of media.
In re Petition of Post-Newsweek Stations, Florida, Inc., 370 So.2d 764, 779 (Fla.1979) (emphasis added; footnote omitted).
Jurors qualify as "participants." See WFTV, Inc. v. State, 704 So.2d 188, 190 (Fla. 4th DCA 1997). Where, as here, the concern about unsolicited contact with jurors is applicable to the entire group of potential, and actual, jurors, the jurors can be treated as a group, without a juror-by-juror inquiry. See Times Publ'g Co. v. State, 632 So.2d 1072, 1075 (Fla. 4th DCA 1994) ("We are not convinced that in the context of the selection of the jury it would be necessary to show particularized concern on the part of each prospective juror in order to preclude cameras from photographing the entire venire.").
In sum, the purpose of forbidding disclosure of the jurors' identities in a high-publicity case is "to protect the jury from outside influence." Sheppard, 384 U.S. at 358, 86 S.Ct. 1507. The common sense of the matter is that where (as here) an order forbidding disclosure of names and addresses is justified, it is also permissible to prohibit the photographing of the jurors.
Certiorari should be denied.[2]
Before SCHWARTZ, C.J., and NESBITT, JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, and SORONDO, JJ.

On Rehearing En Banc
PER CURIAM.
On the court's own motion, the court grants rehearing en banc, see Fla. R. App. P. 9.331(d)(1), and adopts the dissent of Judge Cope to the panel opinion as the opinion of this court. Although in the meantime the underlying criminal trial has ended, we decline to treat the case as moot because the issue presented is likely to recur. See Godwin v. State, 593 So.2d 211, 212 (Fla.1992); Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla. 1984).
In an abundance of caution we address a point raised by footnote in the petition for writ of certiorari. At one point in the delivery of the oral ruling in this case, the trial court said that the broadcast media "will not broadcast their [the jurors'] faces, but the answers to questions provided to the Court, to the parties, will be a matter of *281 public broadcast." Petitioners state that they "are uncertain whether the Trial Court's Order also prohibits publication of juror information disclosed in open court. To the extent the Order seeks to prevent such publication, it is an unconstitutional prior restraint. Nebraska Press Association v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)." When the trial court's oral pronouncements are read in context, we are confident that the court only intended to impose a prohibition on the photographing of the jurors' faces, and that the court in no way intended to prohibit publication of juror information disclosed in open court.
We conclude that the trial court's order did not depart from the essential requirements of law, and accordingly the petition for writ of certiorari is denied.
SCHWARTZ, C.J., and NESBITT, JORGENSON, COPE, LEVY, GERSTEN, GREEN, FLETCHER and SHEVIN, JJ., concur.
SORONDO, J. (dissenting).
I respectfully dissent. I note that neither the defendant, Humberto Hernandez, nor the State of Florida opposed the position taken by the media, the petitioners in this case; that no motion for rehearing has been filed by any party; that the trial judge entered the ruling under review under the mistaken impression that the state was seeking the relief ultimately granted, and that the state candidly told this court that it had no reason to believe that the integrity of the jury in this case was in jeopardy. Regardless of these factors, the majority has decided to review this case en banc and in doing so concludes, contrary to the position taken by both the state and the media, that there is no difference between the publication of the prospective jurors' names and addresses and the broadcasting of their faces. For the reasons set forth in the original panel's majority opinion I disagree with that conclusion and reemphasize that there is a qualitative difference between publishing a juror's name and address and broadcasting a juror's image during a newscast.
The majority opinion holds that where an order forbidding disclosure of names and addresses of jurors is justified, the standard set forth by the Florida Supreme Court in Post-Newsweek Stations for the prohibition of electronic media coverage is not applicable. The legal authority relied upon is "the common sense of the matter." I believe this decision is in direct conflict with Post-Newsweek Stations. In order to ensure review by the Florida Supreme Court, I would certify the following question as one of great public importance:
"WHERE A TRIAL COURT'S ORDER FORBIDDING DISCLOSURE OF THE NAMES AND ADDRESSES OF POTENTIAL AND SELECTED JURORS IS JUSTIFIED, IS IT PERMISSIBLE TO PROHIBIT THE ELECTRONIC VIDEO-PHOTOGRAPHY OF THE JURORS WITHOUT COMPLYING WITH THE STANDARD SET FORTH IN POST-NEWSWEEK STATIONS FOR THE EXCLUSION OF SUCH MEDIA COVERAGE?"
GODERICH, J., concurs.
NOTES
[1] The charges are (1) fabricating physical evidence in violation of section 918.13, Florida Statutes; (2) conspiracy to do same; and (3) acting as an accessory after the fact in violation of section 777.03, Florida Statutes.
[2] The State has explained that its only specific request was to prohibit the disclosure of juror names and addresses, and that it did not ask for a proscription on the photographing of jurors. Be that as it may, the court had the latitude to raise the issue on its own motion.