ALTENBERND, Judge.
The Sarasota Herald-Tribune, Tampa Tribune, and WFLA-TV News Channel 8 (the Media) petition this court to review an order entered by the trial court that attempts to protect the privacy interests of jurors who are currently serving in the criminal trial of Joseph P. Smith. Mr. Smith stands accused of having murdered Carlie Brucia. The case has attracted extraordinary media interest. The trial court’s order also attempts to protect Mr. Smith’s right to receive a fair trial by jury, uninfluenced by matters or persons outside the courtroom. The Media challenges the order, claiming that it violates its rights under the First Amendment and that aspects of the order constitute prior restraint.
I. A Questionable “Emergency,” and a First Amendment Issue that is Created More by the Openness of Florida’s Courts Than by their Secrecy.
The challenged order, entered on October 21, 2005, is attached to this opinion as Appendix A. The order basically requires all of the litigants and court personnel to refer to the jurors by number, instead of name, during court proceedings. The lawyers are free to ask the jurors the usual questions during voir dire in open court, except that they are not to reveal the jurors’ names or addresses. The Media is free to print descriptions of the jurors and observations about their statements and conduct in the courtroom, but the Media is not permitted to publish the names and addresses of the jurors even if the Media learns this information from an outside source. The Media is free to photograph the jury and to publish those photographs, except for the faces of the jurors. As in all trials, the jurors have been instructed by the trial court not to discuss the case with anyone before the case is over. If a juror has a problem or concern, that matter is to be addressed first to the bailiff or the trial judge and not to any other person. In this case, the trial court has reinforced these usual rules by instructing the Media not to have any contact with the jury during the proceedings.
The Media asks this court to quash the portions of the order “restricting release of juror names, banning photographing jurors, prohibiting the publication of juror names and addresses, and precluding the media from having any contact with jurors during the proceedings.” Although the Media describes this matter as an “emergency,” it admits that it does not make a practice of publishing the names and addresses of jurors during criminal trials and that it does not normally release photographs of the faces of such jurors or make any effort to contact them during trial. The Media claims no desire or intention to do any of these acts during this trial. The Media merely does not wish tó have an order instructing it to do that which it intends to do voluntarily. Thus, the Media has filed this “emergency” petition more as a matter of principle and as academic exercise rather than from a genuine need and desire to publish information that it has determined to be vital to its readers or viewers.
The Media did not file this petition as rapidly as most true emergencies are filed in this court. The trial court’s October 21, 2005, order was entered two days before the commencement of jury selection. The Media waited until November 7, 2005, to file this petition. Thus, the petition was not filed until the jury had been selected and had already been promised by the trial court that its privacy would be protected *907 in this manner. The decision not to sequester the jury had already been implemented before the petition was filed.
The Media filed the petition after the jury had been sworn and jeopardy had attached. The respondents in this petition, of course, are all involved in a very serious murder trial in which the State is seeking the death penalty. Neither the State nor Mr. Smith has any disagreement with the trial court’s order. It has been difficult for the respondents, the State, Mr. Smith, and the trial judge, to allocate time to respond on an emergency basis to the Media’s petition, which appears to be an emergency in name only.
There is a certain irony in the reality that the trial court’s order protecting the privacy of the jurors in this case is brought on, not by the secrecy of Florida’s courts, but by the extraordinary steps that Floridians have taken to open our courts to the press and to the public. While many courts, including federal courts, permit only sketch artists into the courtroom, Florida has long permitted liberal access to the media. Our supreme court regularly conducts its oral arguments open to the world by live video on the internet. We live in a state that strongly believes that the legitimacy of our court system and the strength of our democracy is fostered when the public has broad access to court proceedings. There is no question that the informal partnership that the courts have built with the media over the last generation has given the public a far more accurate understanding of court proceedings than can ever be achieved by sketch artists.
But our joint success in making the courtroom accessible to the public has not come without complications. Mr. Smith’s trial is being broadcast live, essentially to the world, by cable television. The cable television industry has come to realize that the public, including people far from Sarasota County, Florida, will view a trial not merely to assure that both sides receive a fair trial, but as a form of informative entertainment. Since the trial of O.J. Simpson, we have known that judges, lawyers, and expert witnesses can easily become household names and celebrities by virtue of a well-publicized trial.
Mr. Smith’s trial, however, from his perspective, is not a matter of informative entertainment. He has a constitutional right to a fair trial by a jury, uninfluenced by matters or people outside the courtroom. Likewise, the jurors did not come to the courthouse to be celebrity guests on a reality TV show. Because they are adults with drivers licenses, they received an order of court compelling them to appear. They are obeying the law and performing a valuable public service that many others shirk.
In article 1, section 23, of the Florida Constitution, every natural person is guaranteed the right “to be let alone and free from governmental intrusion into the person’s private life.” Admittedly, we do not guarantee our citizens that they will be free from media intrusion into their lives, but citizens who are compelled to serve as jurors would seem to be entitled to some degree of protection when the government partners with the media to transform a courtroom into a live television show, supplemented by a large number of multimedia internet sites.
When a trial becomes such an extraordinary event, the trial court often needs to protect the jury from outside influence. Without some protection during the trial, jurors’ names and faces would be readily recognizable by strangers who see them at the gas station, grocery store, or a restaurant. The likelihood that one or more persons would try to influence their deci *908 sions, innocently or otherwise, seems very high.
Sequestration of a jury is always a possibility, but the truth is that sequestration is little better than imposing an involuntary detention on a group of citizens because of their willingness to perform their civic duty. It should be a last resort. There may be times when sequestration is essential to protect a defendant’s right to a fair trial or to assure the media its First Amendment rights, but sequestration is a major intrusion into the liberty rights of the jurors and their families.
It is in this context that the trial court tried to balance the respective constitutional rights of Mr. Smith, the Media, and the jurors. In seeking to achieve this balance, the trial court presented its findings, as they relate to the level of media coverage surrounding these events, to the media representatives prior to imposing the challenged order. It is important to note that the objections raised by the Media did not contest these findings.
II. Analysis
The Media’s petition seeks certio-rari review of the order. A district court reviews a trial court order under its certio-rari jurisdiction to determine whether the trial court violated procedural due process or whether its order departed from the essential requirements of the law. Fassy v. Crowley, 884 So.2d 359 (Fla. 2d DCA 2004). There is no dispute that the trial court gave the Media notice of its intention to impose some restrictions and that it held a hearing on October 13, 2005, to determine the necessity for imposing any limitations on media publication of jury information. The specific media outlets represented at the hearing were The Sarasota Herald Tribune, Sarasota News Now, WFLA Channel 8, The Tampa Tribune, The Bradenton Herald, and all outlets owned by Times Publishing Company. These represented outlets attended the hearing and were given an opportunity to help fashion the least restrictive means to protect Mr. Smith’s right to a fair trial. Thus, the Media is not arguing that it was deprived of due process. It argues that the order departs from the essential requirements of the law and violates the First Amendment.
The Media’s objections go to three provisions within the order:
1. The clerk of this court shall not release to any person the names, addresses, or any other identifying information concerning potential jurors in this case, except as' provided herein. The news media is prohibited from publishing the names and addresses of prospective or seated jurors in this case, except as provided herein.
[[Image here]]
4. The news media is prohibited at any time from taking photographs or video of the faces of the prospective jurors or seated jurors in this case.
5. The media is precluded from having any contact with prospective or seated jurors during the proceedings.
As to the restrictions in paragraph 1, we would first note that although both sentences in paragraph 1 end with “except as provided herein,” there do not appear to be any exceptions actually provided within the order involving anyone other than the parties. As the Media is not a party in the ongoing trial, it would appear it has not been afforded any of the exceptions provided in the order. Furthermore, we note that where members of the media challenged an order of the trial court in a highly publicized criminal trial, in a case with similar facts and circumstances to those in the instant case, the media and the parties were able to reach an indepen *909 dent conclusion that the withholding of jurors’ names and addresses by the court was permissible. Sunbeam Television Corp. v. State, 723 So.2d 275 (Fla. 3d DCA 1998).
However, the second sentence of paragraph 1 is unquestionably a prior restraint. As stated, this sentence not only restricts publication of jurors’ names and addresses obtained through the court, but it also prevents the publication of this information when obtained through any outside source. Furthermore, the order does not expressly state whether these restrictions will end at the conclusion of the trial. At best, these deficiencies make the restrictions in paragraph 1 overly broad.
Florida Rule of Judicial Administration 2.170 provides a presiding judge with the authority to control electronic media and still photography coverage of trial court proceedings. Rule 2.170(a) specifically provides:
Subject at all times to the authority of the presiding judge to: (i) control the conduct of proceedings before the court; (ii) ensure decorum and prevent distractions; and (iii) ensure the fair administration of justice in the pending cause, electronic media and still photography coverage of public judicial proceedings in the appellate and trial courts of this state shall be allowed in accordance with the following standards of conduct and technology promulgated by the Supreme Court of Florida.
In order for a threat to the administration of justice to permit the imposition of a prior restraint, that threat must be immediate. Miami Herald, v. McIntosh, 340 So.2d 904, (Fla.1976). None of the parties or participants in this proceeding have indicated that there exist any specific threats to either the jury venire as a whole or to any individual member of the impaneled jury. However, the findings of the trial court regarding the intense media coverage during these proceedings and the possibilities of juror influence or harassment while the jurors are going about their daily lives is certainly a valid concern related to the fair administration of justice. There are unquestionably times when it might be necessary for a trial judge to impose media restrictions on the publication of juror information, and nothing in this opinion should be read to fault the trial court in the execution of its valid intent to protect the jurors’ privacy interests and the Sixth Amendment rights of the accused while maintaining a balancing with the First Amendment interests of the press and public.
The test used to analyze whether restraints imposed on the media in criminal cases constitute an unconstitutional prior restraint was established in Nebraska Press Ass’n v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). The Supreme Court in Nebraska Press set forth a three-prong consideration to determine: (1) the nature and extent of pretrial news coverage; (2) whether alternative, less restrictive measures are available which would protect the integrity of the judicial process without imposing a restraint on the media; and (3) the effectiveness of the ordered restraint.
There is no doubt that the media coverage of this trial is extreme as it relates to the first prong of Nebraska Press. Furthermore, the trial court cannot be expected to rely on an indication from seven represented media outlets, the unrepresented internet bloggers, and other less reputable communication sources that they have no intent to publish the names and addresses of the jury to ensure the integrity of trial. Nothing in the record before this court allows us to conclude that any specific intimidation or threat to the jury has occurred, but the trial court clearly *910 sets forth a basis for why the publication of jurors’ names and addresses might create individualized instances of intimidation. Taking steps to prevent court-provided access to the very information that would enable specific identification of individual juror members would appear to be within the trial court’s discretion. Neither the State, Mr. Smith, the media, or any other entity has presented evidence or documentation to suggest that this order has been ineffective in protecting the jury from public intimidation and ensuring that throughout the proceedings, thus far, ANY undue influence has occurred. However, our concern with the restraint imposed in paragraph 1 is primarily related to whether less restrictive alternatives to denying any and all publication of this information, regardless of its source, were ever available or considered,
As it is broadly stated, we must quash that portion of paragraph 1 that prohibits the publication of the otherwise obtained jury information. “Although a government may deny access to information and punish its theft, government may not prohibit or punish the publication of the information once it falls into the hands of the press unless the need for secrecy is manifestly overwhelming.” Fla. Publ’g. Co. v. Brooke, 576 So.2d 842 (Fla. 1st DCA 1991). Although we make no specific findings as to whether circumstances at this point in the trial would or would not allow for the prior restraint of this information, there currently exists nothing in the record before us to say that all less restrictive means were adequately considered, and we cannot uphold this portion of the order.
As to the restrictions in paragraph 4, we first note that the Media characterizes this restriction as a prohibition against photographing the jurors, when the restriction is actually limited to the jurors’ faces. We recognize, however, that it might be difficult or impossible to photograph the jurors without the risk of photographing their faces. Additionally, the order contains no time limit and is ambiguous as to whether it applies to locations other than the courtroom or the courthouse. Effectively, paragraph 4 also operates as a prior restraint because the obvious intent of prohibiting the act of photographing a juror’s face is to prohibit the subsequent publication of that image.
“No court has held that it is per se reversible error to allow the jurors’ faces to be photographed' in a controversial criminal trial. It is ultimately the fairness of the proceedings which determines the appropriateness of limitations on media access.” Chavez v. State, 832 So.2d 730, 760 (Fla.2002). By waiting to file this petition, the Media created a situation whereby the seated jurors have now been given an assurance of privacy in reliance on the trial court’s order; making it difficult to examine the less restrictive alternatives that might have been available to the court at the time the prior restraint was imposed when many of those less restrictive means are no longer available in light of the jurors’ foreseeable reliance on privacy assurances of the order.
The presiding judge may exclude electronic media coverage of a particular participant only upon a finding that such coverage will have a substantial effect upon the particular individual which would be qualitatively different from the effect on members of the public in general and such effect will be qualitatively different from coverage by other types of media.
In re Post-Newsweek Stations, 370 So.2d 764, 779 (Fla.1979). Although WFTV v. State, 704 So.2d 188, 191 (Fla. 4th DCA 1997), holds that “[n]othing in Rule 2.170, Posb-Newsweek, or any other supreme court opinion suggests that jurors or pro *911 spective jurors are to be treated differently from other types of trial participants— such as attorneys, witnesses, or court personnel — for the purposes of publishing or broadcasting their photographic images,” the media’s rights in recording the courtroom proceedings are not absolute, and the trial court may properly impose certain restrictions on the media’s presence in a court proceeding.
The holding in Sunbeam identifies the possibility of circumstances whereby a trial court could properly impose a restriction on the media coverage of jurors when that court finds that, as set forth in Post-Newsweek, “such coverage will have a substantial effect upon the particular individual which would be qualitatively different from the effect on members of the public in general and such effect will be qualitatively different from coverage by other types of media.” 723 So.2d at 278. In imposing the restrictions in the order currently on review, the trial court argues that it specifically made the requisite findings. This argument raises the question of whether, in light of the holding in Sunbeam, the trial court’s order as to paragraph 4 is in fact a departure from the essential requirements of law. Our review of this question would be somewhat limited by the Media’s self-imposed necessity for this court’s hurried review. However, we need not reach a conclusion to this far-reaching question to fully review the issue currently before us because the restraints imposed by paragraph 4 are overbroad as currently written.
As to the restrictions in paragraph 5, although it appears to be intended as merely a counterpart to the restrictions placed on the jury through any standard jury instructions, the prohibition against “any contact” “during the proceedings” seems very broad and ambiguous and requires that the prohibition be stricken.
The overbreadth of paragraphs four and five is partially remedied by the fact that a jury has already been seated. In paragraph four, the trial court prohibited the news media from taking a photograph or video of the face of a prospective juror as well as a selected or seated juror “at any time.” Similarly, in paragraph five, the news media was prohibited from having “any contact with prospective or seated jurors during the proceedings.” Paragraph four prohibits the taking of a photograph or video depiction of a prospective juror “at any time.” As there is no legal basis to continue to maintain the bar, because a jury panel has now been selected and seated, such a prohibition, even if initially valid, must now expire. Paragraph five similarly bars “any contact” with prospective jurors by the media. The prohibition is not limited as to time or place and “any contact” is, as used, overbroad. However, for the reasons previously expressed related to prospective jurors in paragraph 4, this bar must also now expire.
The remaining prohibitions upon the Media set forth in paragraphs four and five pertaining to the actual sitting jurors suffer from the identical overbroad deficiencies as those identified for prospective jurors. For example, paragraph four could be read to preclude publication even after the jurors’ terms of service have expired. Paragraph five suffers from a similar defect. As another example, the term “during these proceedings” could be interpreted to include all legal proceedings involving the instant case, including appeals.
Accordingly, we hold that the prohibitions that remain set forth in paragraphs four and five shall expire at 11:00 p.m. on November 18, 2005. We do not strike them immediately so that the trial court may, if it so chooses, enter a new, *912 properly defined order with all necessary findings as set forth by current case law, prior to the expiration of time identified herein. Due to the constraints of the continuing trial process, it may be necessary for the trial court to seek assistance from another judge to accomplish this task. For the above-stated reasons, we grant the Media’s petition in part and quash that portion of the trial court’s order referred to in this opinion as the second sentence of paragraph 1. Furthermore, should the trial court decline to enter a new order addressing the deficiencies identified in paragraphs 4 and 5 within the time constraints set forth in this opinion, those portions of the order are also quashed.
Petition granted and order quashed in part.
CASANUEVA and VILLANTI, JJ., Concur.

APPENDIX A

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA
STATE OF FLORIDA, vs. JOSEPH P. SMITH, Defendant.
CASE NO. 2004 CF 2129 NC

ORDER CONCERNING MEDIA COVERAGE; ORDER LIMITING RELEASE OF JUROR INFORMATION; ORDER RESTRICTING INTERVIEWS HELD WITHIN SARASOTA JUDICIAL CENTER

This matter came before the Court on its own motion in anticipation of the pending jury trial scheduled to commence on November 7, 2005. The Court provided timely notice of the hearing to the parties and the media representatives to allow a fair opportunity to be heard.[1] At the conclusion of the hearing, which was held on October 13, 2005, counsel for the media requested additional time to file additional, written objections, and the request was granted. ■
Case law provides that a “ruling can be supported by matters within the judicial knowledge of the trial judge, provided they are identified on the record and counsel [is] given an opportunity to refute or challenge them.” State v. Palm Beach Newspapers, 395 So.2d 544, 547 (Fla.1981). At the hearing, the Court set forth the following findings and rulings on the record and provided counsel and media representatives a fair and reasonable opportunity to challenge or refute them.
Findings
1. This is a case of intense public interest, which has generated significant media attention, both nationally and locally. The media coverage has consisted not only of newspaper articles, but has also included television, radio, and online coverage.
2. Examples of online media coverage include the following:
a. On the Sarasota Herald-Tribune’s website, there is a section entitled “Special . Section: Carlie Brucia Abduction” containing an extensive history of the Brucia case including videos, documents and archived news stories. See Sarasota Herald-Tribune Online (visited October 13, 2005)
b. The Tampa Tribune’s website has a similar “Special Reports” section dedicated to news stories, videos and ongoing coverage of the Carlie Brucia case.
*913 See The Tampa Tribune Online (visited October IB, 2005)
c. The St. Petersburg Times Online has a similar “websection” devoted to “The Search for Carlie” See The St. Petersburg Times Online (visited October 13, 2005)
3. A Google internet search using the words, “Carlie Brucia murder” yields approximately 15,000 hits and likely will yield more hits as the trial date approaches.
4. The national media has also covered this case extensively and an online search reveals that as of October 13, 2005, approximately 9 stories had been posted on CNN.COM and 22 stories has been posted on FOXNEWS.COM.
5. Jurors must be assured of the ability to go about their daily business without being identified, or accosted, by individuals in the community who may recognize their names or faces from the television or media coverage of the trial. This need requires that reasonable steps be taken to restrict the release of identifying information of the jurors. See Sunbeam Television Corp. v. State, 723 So.2d 275 (Fla. 3d DCA 1998), reh’g en banc granted 723 So.2d at 280 (Fla. 3d DCA 1998) rev. denied 740 So.2d 529 (Fla.1999).
6. By protecting the jurors’ identities, they will be protected from outside influences, such as individuals who may recognize them and offer unsolicited “advice,” or “tips,” unwanted personal comments, or opinions about the case. See Sunbeam Television Corp. v. State, 723 So.2d 275 (Fla. 3d DCA 1998) reh’g en banc granted 723 So.2d at 280 (Fla. 3d DCA 1998) rev. denied 740 So.2d 529 (Fla.1999).
7. In Sheppard v. Maxwell, the United States Supreme Court described the unfortunate impact of a lower court failing to properly protect jurors and noted:
The numerous pictures of the jurors, with their addresses, which appeared in the newspapers before and during the trial itself exposed them to expressions of opinion from both cranks and friends.
Sheppard v. Maxwell, 384 U.S. 333, 353, 86 S.Ct. 1507, 16 L.Ed.2d 600, (1966).
8. The Court has an affirmative duty to control all aspects of pretrial and trial proceedings and must take steps, to ensure that the jurors are not improperly influenced by extraneous factors or sources sufficient to endanger the Defendant’s right to a fair trial. Gannett Co. Inc. v. State, 571 A.2d 735, 751 (Del.1990).[2]
9. The Court finds there is an imminent threat to the administration of justice in this case, sufficient to ban the media from photographing and videotaping prospective or seated jurors. See Times Publishing Co. Inc. v. State, 632 So.2d 1072, 1075-1076 (Fla. 4th DCA 1994). This Order extends beyond the courtroom as detailed below.
10. The Court finds it would serve little purpose to protect juror privacy within the courtroom without instituting measures to protect the jurors’ privacy and security once they leave the judicial center.
11. The Court has coordinated with the Sarasota County Sherriff s Office to ensure thát proper security measures are in place. To detail the extent of the security measures that the Sherriffs Office and the Court have been taken in this Order, which when entered will be a public rec *914 ord, would seriously curtail the effectiveness of those measures.
12. Pursuant to the provisions' of Administrative Order 2004-24.2, paragraph 11, which provides “if available, space for interviews will be designated,” the Court makes a specific finding that the Sarasota Judicial Center does not contain adequate space available for media representatives to conduct interviews. Media representatives will need to conduct interviews outside the Sarasota Judicial Center.
It is, therefore,
ORDERED:
1. The clerk of this Court shall not release to any person the names, addresses, or any other identifying information concerning potential jurors in this case, except as provided herein. The news media is prohibited from publishing the names and addresses of prospective or seated jurors in this ease, except as provided herein.
2. Trial Counsel for the State of Florida and the Defendant are hereby exempted from this provision and shall be given full access to potential juror information. Trial Counsel may use such information to investigate for the purposes of the voir dire process, but shall not reveal this information to anyone not a party to this action or a member of the trial counsel’s litigation team.
3. On jury selection days, prospective jurors will be assigned numbers. Each prospective juror will have a unique number. In open court, the Judge, trial counsel, the courtroom clerk, and the jury office will refer to the prospective jurors (and eventually seated jurors) only by number. No one shall reference a prospective juror by name or reveal juror-identifying information, such as addresses in open court.
4.The news media is prohibited at any time from taking photographs or video of the faces of the prospective jurors or seated jurors in this case.
.5. The media is precluded from having any contact with prospective or seated jurors during the proceedings.
6. The news media remains free, subject to the specific provisions of this Order, to report any events surrounding this case.
7. The media is not precluded from being present in the courtroom according to prior agreed-upon procedures for high-profile cases.
8. The media is not precluded from publishing identifying juror information disclosed in court or answers to questions that are disclosed in open court.
9. The media is not to approach trial counsel, the Defendant, witnesses, or the Judge while in the Courtroom.
10. If juror questionnaires or information sheets are used, and those records are deemed to constitute public records under Florida law, and proper requests are made for those récords during the time of jury selection and the trial of this case, prior to their release, any juror identifying information (for either prospective or seated jurors) 'shall be released from the questionnaires or information sheets.
11. Due to space constraints within the Sarasota Judicial Center and for safety considerations, all interviews conducted by media representatives must occur outside of the Sarasota Judicial Center.[3]
12. No cellular telephones or electronic devises, which security determines may *915 cause unnecessary disruptions or distractions will be permitted in the courtroom.
DONE AND ORDERED in Sarasota, Sarasota County, Florida, on this 21st day of October 2005.
/s/ Andrew D. Owens, Jr.
Andrew D. Owens, Jr., Circuit Judge
Copies Faxed to:
Debra Johnes Riva, Assistant State Attorney at (941) 861-4465
Adam Tebrugge, Assistant Public Defender at (941) 861-4565
Gregg Thomas, Esq. and Rachel Fugate, Esq., at (813) 229-0134
Penelope T. Bryan, Esq. And Thomas E. Reynolds at (727) 823-6189
Barry Tarleton, Chairman of Media Committee at (941) 342-6800
Copies to:
Office of Court Administration-Sarasota County
Court Reporter-Sarasota County
Bailiffs-Sarasota County
Court Clerk-Sarasota County

. See WFTV, Inc. v. State, 704 So.2d 188, 190 (Fla. 4th DCA 1998).

. The Florida Supreme Court also stressed that, "it remains essential for trial judges to err on the side of fair trial rights for both the state and the defense. The electronic media’s presence in Florida's courtrooms is desirable, but it is not indispensable.” State v. Palm Beach Newspapers, 395 So.2d 544, 549 (Fla.1981).

. As clarified in open court, the media may make a request for an interview while in the Sarasota Judicial Center; however, the actual interview must occur outside.