LAWSON, J.
Mark Schmidter and Julian Heicklen timely appeal their respective judgments and sentences for indirect criminal contempt of court.[1] As to Heicklen, we agree that a reversal is required because the trial court allowed him to represent himself at trial without conducting a Faretta[2] inquiry as required by law. See, e.g., State v. Young, 626 So.2d 655 (Fla.1993); McGee v. State, 983 So.2d 1212 (Fla. 5th DCA 2008). As for Schmidter, we affirm the judgments in part. While we agree with Schmidter that one of the administrative orders underlying the contempt action was constitutionally infirm, we conclude that the other was not. Accordingly, we affirm the judgments finding Schmidter in contempt for violating one of the orders only, and remand for resentencing as to those convictions.

Facts

Schmidter and Heicklen are both active members or supporters of an organization known as the Fully Informed Jury Association (“FIJA”). Appellants explain that the “FIJA is an organization engaged in educating the public about the jury system by distributing literature at courthouses across the country to potential jurors[;]” that its “mission is to educate the public about their rights as jurors ‘that the judge won’t tell you[;]’” and, “[a]t its essence, FIJA’s mission is to promote awareness of the ‘jury pardon,’ or the de facto ability for jurors to nullify a provision of law they deem to be immoral by acquitting criminal defendants tried thereupon.” In this case, the two were distributing pamphlets to potential jurors on the Orange County Courthouse grounds, which included statements such as:
* ... judges only rarely “fully inform” jurors of their rights, especially their right to judge the law itself and vote on the verdict according to conscience.
* Too often, jurors who try to vote then-consciences are talked out of it by other jurors who don’t know their rights, or who believe they “have to” reach a unanimous verdict because the judge said that a hung jury would “unduly burden the taxpayers.”
* It is precisely because people have individual, independent feelings, opinions, wisdom, experience and conscience that we depend upon jurors to refuse to mindlessly follow the dictates of a judge or of bad law.
⅜ So, when it’s your turn to serve, be aware: 1. You may, and should, vote *266 your conscience; 2. You cannot be forced to obey a “juror’s oath”; 3. You have the right to “hang” the jury with your vote if you cannot agree with other jurors!
* BE ACTIVE! Tell others what you know about jury veto power!
* Before a jury reaches a verdict, each member should consider: 1. Is this a good law? 2. If so, is the law being justly applied? 3. Was the Bill of Rights honored in the arrest? 4. Will the punishment fit the crime?
During the course of their leafleting campaign, deputies informed Schmidter and Heicklen that they were violating two separate administrative orders, and gave copies of the orders to them. The first order, Administrative Order No. 2011-03, provides in relevant part:

ADMINISTRATIVE ORDER GOVERNING EXPRESSIVE CONDUCT TOWARD SUMMONED JURORS, ORANGE [COUNTY]

WHEREAS, pursuant to Article V, section 2(d) of the Florida Constitution and section 43.26, Florida Statutes, the chief judge of each judicial circuit is charged with the authority and the power to do everything necessary to promote the prompt and efficient administration of justice; and
WHEREAS, pursuant to the chief judge’s constitutional and statutory responsibility for' administrative supervision of the courts within the circuit and to create and maintain an organization capable of effecting the efficient, prompt, and proper administration of justice for the citizens of this State, the chief judge is required to exercise direction, see Fla. R. Jud. Admin. 2.215(b)(2), (b)(3); and
WHEREAS, to ensure the safe and orderly use of court facilities, and to minimize activities which unreasonably disrupt, interrupt, and interfere with the fair and orderly conduct of jury trials, and the orderly and peaceable conduct of court business in a neutral forum free of actual or perceived partiality; and
WHEREAS, expressive conduct and the dissemination of leaflets and other materials containing written information tending to influence summoned jurors as they enter the courthouse may be in violation of section 918.12, Florida Statutes; and
WHEREAS, pursuant to a defense motion to strike, a Ninth Judicial Circuit Court judge recently found a jury panel had been tampered with per section 918.12, Florida Statutes, and Nobles v. State, 769 So.2d 1063 (Fla. 1st DCA 2000), as members of the jury were in possession of leaflets containing information attempting to influence the jury. Such occurrences severely impact the court’s ability to conduct the efficient, prompt, and proper administration of justice; and
WHEREAS, restriction upon expressive conduct and the dissemination of leaflets and other materials containing written information tending to influence summoned jurors as they enter the courthouse is necessary to serve the State’s compelling interest in protecting the integrity of the jury system; and
WHEREAS, any such restriction will be narrowly drawn to achieve that end; and
WHEREAS, such regulation is a proper exercise of the Court’s inherent authority to take supervisory and administrative actions necessary to implement its judicial functions; and
WHEREAS, the power of courts to punish for contempt is of immemorial antiquity, and is inherent in all courts as *267 a necessary power belonging to them in order to enable them to accomplish the purposes for which they were designed; that is, the orderly trial and decision of causes, the enforcement of public order, the prevention of interferences with their proceedings, and the enforcement of the due respect belonging to them as institutions of the country;
NOW THEREFORE, I, Belvin Perry, Jr., in order to facilitate the efficient administration of justice, pursuant to the authority vested in me as Chief Judge of the Ninth Judicial Circuit of Florida under Florida Rule of Judicial Administration 2.215, hereby order the following, effective immediately, and to continue until further order:
1. The dissemination of all leaflets and other materials to summoned jurors containing written or pictorial information tending to influence summoned jurors, as well as approaching a summoned juror for the purpose of displaying a sign to, or engaging in oral protest, education or counseling with information tending to influence summoned jurors on any matter, question, cause, or proceeding which may be pending, or which may by law be brought, before him or her as such juror, shall be prohibited on the Orange County Courthouse complex grounds.
The term “courthouse complex” and any restrictions on expressive conduct contained herein shall apply to the Orange County Courthouse complex grounds, which includes the adjacent courthouse parking garage, the courthouse courtyard, and all other grounds surrounding the courthouse, from the intersection of Orange Avenue and Livingston Street, to the intersection of Livingston Street and Magnolia Avenue, to the intersection of Magnolia Avenue and Amelia Street, to the intersection of Amelia Street and Orange Avenue, to the intersection of Orange Avenue and Livingston Street. The public sidewalks that comprise the boundaries of this designated perimeter are excluded from this designation of the courthouse complex grounds.
[[Image here]]
4. Anyone engaging in the type of expressive conduct as contemplated by this Order may be in violation of section 918.12, Florida Statutes, and/or may be found in contempt of court.
5. The Orange County Sheriffs Office, ... shall give a copy of this Order and advise anyone who is within the courthouse complex grounds, as described herein, violating the provisions of this Order, of the restrictions on expressive conduct contained within this Order. Further, law enforcement shall instruct anyone violating the provisions of this Order to cease and desist immediately.
6. Anyone who is observed continuing to engage in such conduct as contemplated by this Order, after receiving a copy of this Order and being instructed to cease and desist by law enforcement, may face indirect civil contempt of court proceedings. If found to be in contempt of court, penalties include confinement, fine or both.
(emphasis added).
The second administrative order, Administrative Order No. 2011-07,[3] provides in relevant part:

*268
ADMINISTRATIVE ORDER GOVERNING DESIGNATED PUBLIC SPEECH AREAS ON THE MAIN ORANGE COUNTY COURTHOUSE COMPLEX GROUNDS

WHEREAS, pursuant to Article V, section 2(d) of the Florida Constitution and section 43.26, Florida Statutes, the chief judge of each judicial circuit is charged with the authority and the power to do everything necessary to promote the prompt and efficient administration of justice; and
WHEREAS, pursuant to the chief judge’s constitutional and statutory responsibility for administrative supervision of the courts within the circuit and to create ..and maintain an organization capable, .of effecting the efficient, prompt, and proper administration of justice for the citizens of this State, the chief judge is required to exercise direction, see Fla. R. Jud. Admin. 2.215(b)(2), (b)(3); and
WHEREAS, to ensure the safe and orderly use of court facilities, and to minimize activities which disrupt, interrupt, or interfere with the fair and orderly conduct of jury trials, and the orderly and peaceable conduct of court business in a neutral forum free of actual or perceived partiality; and
WHEREAS, the integrity of the jury system and the efficient and fair administration of justice is vital to our judicial system; and
WHEREAS, the unhindered and untrammeled functioning of our courts is part of the very foundation of our constitutional democracy; and
WHEREAS, the Court may adopt safeguard’s necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence. The citizens of the State of Florida deserve no less; and
WHEREAS, “people who wish to propagandize protests or views do not have a constitutional right to do so whenever and however and wherever they please.” United States v. Grace, 461 U.S. 171, 177-178, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) (quoting Adderley v. Florida, 385 U.S. 39, 47-48, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966)); and
WHEREAS, courthouses and their surrounding grounds have not been traditionally held open for the use of the public for expressive activities. Huminski v. Corsones, 396 F.3d 53 (2d Cir.2005) (see also United States v. Grace, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); and
WHEREAS, this Court recognizes that the accommodation of specifically designated public speech zones on the courthouse complex grounds is a regulation of government property enacted to avoid disruption to one of the core tenets of American free society — a reliable, trustworthy system of justice, ensuring the rights of all while preserving fundamental First Amendment rights; and
WHEREAS, such regulation is a proper exercise of the Court’s inherent authority to take supervisory and administrative actions necessary to implement its judicial functions; and
WHEREAS, the power of courts to punish for contempt is of immemorial antiquity, and is inherent in all courts as a necessary power belonging to them in order to enable them to accomplish the purposes for which they were designed; that is, the orderly trial and decision of causes, the enforcement of public order, the prevention of interference with their proceedings, and the enforcement of the due respect belonging to them as institutions of the country;
*269 NOW THEREFORE, I, Belvin Perry, Jr., in order to facilitate the efficient administration of justice, pursuant to the authority vested in me as Chief Judge of the Ninth Judicial Circuit of Florida under Florida Rule of Judicial Administration 2.215, hereby order the following, effective immediately, and to continue until further order:
1. It is prohibited for any person or group to engage in any type of First Amendment activities within the main Orange County courthouse complex grounds, unless the First Amendment activities occur within a designated Exempt Zone, as deñned herein.
2. The courthouse complex grounds are defined as Buildings A, B and C which comprise the Orange County courthouse structures, the adjacent courthouse parking garage, the courtyard, and all other grounds surrounding the courthouse, from the intersection of Orange Avenue and Livingston Street, to the intersection of Livingston Street and Magnolia Avenue, to the intersection of Magnolia Avenue and Amelia Street, to the intersection of Amelia Street and Orange Avenue, to the intersection of Orange Avenue and Livingston Street. The public sidewalks that comprise the boundaries of this designated perimeter are excluded from this designation of the courthouse complex grounds.
3. Exempt Zones mean those portions of public property within, or the boundary of, the courthouse complex grounds specifically described by this Order and designated as Public Speech Zones.
[[Image here]]
10. Anyone who is observed continuing to engage in such conduct as contemplated by this Order, after receiving a copy of this Order and being instructed to cease and desist by law enforcement or move to an Exempt Zone, may face indirect civil contempt of court proceedings. If found to be in contempt of court, penalties include confinement, fine or both.
(Emphasis added).
After being placed on notice of these orders, and advised that continued violation of the orders could result in contempt sanctions, including incarceration, Appellants continued to hand out FIJA flyers and pamphlets on the walkway that leads from the courthouse garage to the main courthouse entrance and at other areas within the courthouse complex grounds (outside of the designated free-speech zones), where they believed individuals summoned for jury duty could be easily intercepted. Ultimately, Schmidter and Heicklen were arraigned on charges of indirect criminal contempt and tried before the chief judge, who found both guilty of two counts each.[4] The judge sentenced Schmidter to concurrent sentences of 141 and 151 days of incarceration in the Orange County Jail and a fine of $250 for each conviction, together with court costs. Heicklen received concurrent sentences of 145 days’ incarceration in the Orange County Jail, along with a $250 fine for each conviction and court costs. Both Appellants were granted supersedeas bonds shortly after their respective trials.

*270
Constitutionality of Administrative Orders

Appellants contend that the trial court erred in finding them guilty of indirect criminal contempt for violating Administrative Order No.2011-03, arguing that the order violates their First Amendment rights because it constitutes an unconstitutional content-based regulation of speech in a traditional public forum, which cannot survive judicial review under the “strict scrutiny” analysis applicable to that type of regulation. Contrary to Appellant’s argument, this order does not apply to speech in a traditional public forum. This is because courthouses and courthouse grounds (with the exclusion of perimeter public sidewalks) have uniformly been treated as nonpublic forums for purposes of First Amendment analysis. See U.S. v. Grace, 461 U.S. 171, 177-79, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); Huminski v. Corsones, 396 F.3d 53, 90-91 (2d Cir.2005); Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 966 (9th Cir.2002); and Comfort v. MacLaughlin, 473 F.Supp.2d 1026, 1028 (C.D.Cal.2006).
A nonpublic forum “exists when publicly-owned facilities have been dedicated to use for either communicative or non-communicative purposes but have never been designated for indiscriminate expressive activity by the general public.” Gre-goire v. Centennial Sch. Disk, 907 F.2d 1366, 1370-71 (3d Cir.1990). The standard for judging the constitutionality of regulation affecting First Amendment activity at a nonpublic forum has been concisely stated by the United States Supreme Court:
[I]t is also black-letter law that, when the government permits speech on government property that is a nonpublic forum, it can exclude speakers on the basis of their subject matter, so long as the distinctions drawn are viewpoint neutral and reasonable in light of the purpose served by the forum.
Davenport v. Wash. Educ. Ass’n, 551 U.S. 177, 189, 127 S.Ct. 2372, 168 L.Ed.2d 71 (2007); see also Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 808, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (a “[gjovernment’s decision to restrict access to a nonpublic forum need only be reasonable; it need not be the most reasonable or the only reasonable limitation”).
“The reasonableness of the Government’s restriction of access to a nonpublic forum must be assessed in the light of the purpose of the forum and all the surrounding circumstances.” Cornelius, 473 U.S. at 809. “The government is not required to choose the least restrictive alternative, it need only choose one that reasonably fulfills a legitimate and demonstrated need.” MacLaughlin, 473 F.Supp.2d at 1029) (citing Swarner v. U.S., 937 F.2d 1478, 1482-83 (9th Cir.1991)). Importantly, “[t]he First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker’s message. Rarely will a nonpublic forum provide the only means of contact with a particular audience.” Cornelius, 473 U.S. at 809 (citation omitted).
We have no difficulty upholding Administrative Order No. 2011-03 as a reasonable, viewpoint neutral regulation in light of the purpose of the forum (the courthouse). As recognized by the United States Supreme Court:
There can be no question that a State has a legitimate interest in protecting its judicial system from the pressures which picketing near a courthouse might create. Since we are committed to a government of laws and not of men, it is of the utmost importance that the administration of justice be absolutely fair *271 and orderly. This Court has recognized that the unhindered and untrammeled functioning of our courts is part of the very foundation of our constitutional democracy ... [and that a] State may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence.
Cox v. Louisiana, 379 U.S. 559, 562, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). It seems obvious that allowing groups or individuals to disseminate materials to summoned jurors, at the courthouse, in an attempt to influence jurors’ decisions in cases they are called upon to decide would interfere with the proper administration of the justice system. The order does not seek to bar any groups or individuals from getting their message out in other places or using other methods; it only restricts the delivery of messages aimed at influencing jurors’ decisions on courthouse grounds. The court’s responsibility is to provide for the orderly administration of justice and to ensure that all litigants have their “day in court” — a day which is free from influences outside of the courtroom — and the order is clearly reasonable in light of that aim.
With respect to Administrative Order No. 2011-07, Appellants challenge the order as either vague or “unconstitutionally overbroad,” and we agree.[5] The order broadly prohibits “any type of First Amendment activities” (with no other definition or limitation) anywhere in the courthouse complex except for designated “exempt zones.” If the order really is intended to encompass “any type of First Amendment activity,” it would be over-broad in that it would affect substantially more speech than necessary to protect the orderly functioning of the courts. Alternatively, if the order is intended to be more narrowly applied to activity that would disrupt the orderly administration of justice, it is vague in that does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. See, e.g., Bd. of Airport Comm’rs of L.A. v. Jews for Jesus, Inc., 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (holding that a resolution of the board of airport commissioners banning all “First Amendment activities” within “Central Terminal Area” violated the First Amendment because it was substantially over-broad, and not fairly subject to a limiting construction); City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (holding city ordinance which was not limited to fighting words, or to obscene or opprobrious language, but prohibited speech that “in any manner” interrupted a police officer in performance of duties was unconstitutionally overbroad; law provided police with unfettered discretion to arrest individuals for words or conduct that annoyed or offended them); *272 Sarasota Herald-Tribune v. State, 916 So.2d 904 (Fla. 2d DCA 2005) (holding an order prohibiting the news media from having “any contact” with prospective or seated jurors during high-profile murder trial to be unconstitutionally overbroad).

Conclusion

In summary, we reject Appellants’ constitutional challenge to Administrative Order No.2011-03, but agree that Administrative Order No. 2011-07 is unconstitutionally overbroad. Although Appellants raise several additional issues, none merit discussion. As such, we vacate any finding of contempt premised upon a violation of Ordinance No. 2011-07, but affirm the contempt judgments relating to Schmidter’s willful violation of Order No. 2011-03. On remand, the trial court shall resentence Schmidter for his violation of Order No. 2011-03, and may retry Heicklen for violating Order No. 2011-03 only.
AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH DIRECTIONS.
EVANDER and COHEN, JJ., concur.

. Schmidter’s and Heicklen's cases were consolidated by this court for purposes of appeal due to the similarity of the facts and legal issues to be considered and determined.

. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

. As originally entered, Order No.2011-07 had an expiration date of July 15, 2011. However, the chief judge later made the provisions of Order No.2011-07 permanent with the issuance of Order No.2011-07-01.

. Schmidter was represented by counsel at trial. Heicklen indicated that he wished to proceed without counsel, and the trial court allowed him to do so without further inquiry. As already indicated, this error requires a reversal with, respect to Heicklen’s convictions. Although both Appellants were represented throughout most of this appeal, Heick-len discharged his appellate counsel after oral argument.

. Appellee argues that Appellants lack standing to raise this issue because their conduct (pamphleteering) obviously "fell within the statute’s proscriptions.” We reject this argument. See, e.g.,U.S. v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) ("[ajlthough ordinarily '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,’ we have relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech”); 10A Fla. Jur 2d Constitutional Law § 306 (recognizing that "the overbreadth doctrine permits an individual whose own speech or conduct may be prohibited to challenge an enactment facially because it also threatens others not before the court — those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid”) (citations omitted)).